PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:   (818) 883-4900
Fax:         (818) 883-4902
Email:       peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:   (213) 599-8255
Fax:         (213) 402-3949
Email:       lonnieblanchard@gmail.com

Attorneys for Plaintiff Sarmad Syed

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sarmad Syed, an individual, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>M-I LLC, a Delaware Limited Liability Company, PreCheck, Inc., a Texas Corporation, and Does 1 through 10,<br><br>    Defendants. | Case No. 14-CV-00742-WBS-BAM<br>**CLASS ACTION**<br><br>**First Amended Complaint and Demand for Jury Trial** |

Plaintiff Sarmad Syed ("Plaintiff") alleges:

1. This class action alleges that certain policies and practices followed by Defendants M-I LLC and PreCheck, Inc. and the Doe Defendants in furnishing, using, procuring, and/or causing to be procured consumer reports for employment purposes violate the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq*. Specifically, Defendants violated Section 1681b(b) of the FCRA by furnishing, using, procuring, and/or causing to be procured consumer

**First Amended Complaint**

1

reports for employment purposes by failing to make proper disclosures required thereunder and/or by failing to make and/or obtain the required certifications required thereunder.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction under 15 U.S.C. Section 1681p.

3. Venue is proper in this Court under 28 U.S.C. Section 1391(b) because the Defendants regularly do business in this district.

**PARTIES**

4. Sarmad Syed ("Plaintiff") is a resident of California and is a "consumer" protected by the FCRA.

5. The FCRA defines a "person" as ". . . any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental sub-division, or other entity."

6. Defendant M-I LLC ("M-I") is believed to be Delaware limited liability company. M-I is a "person" as defined by the FCRA.

7. The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living which is used or expected to be used for. . . (B) employment purposes."

8. M-I, as standard practice, routinely procures or causes to be procured "consumer reports" from consumer reporting agencies about its employees or prospective employees for employment purposes.

9. Defendant PreCheck, Inc. ("Pre-Check") is believed to be a Delaware corporation. Pre-Check is a "person" as defined by the FCRA. At all times relevant hereto, PreCheck, Inc. was a "consumer reporting agency" governed by the FCRA. During the relevant time, PreCheck, Inc. was regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. Section 1681(d), to third parties, including M-I for employment purposes. PreCheck furnished consumer reports to M-I concerning Plaintiff and other class members and also furnished

**First Amended Complaint**

2

consumer reports to other persons concerning class members for employment purposes.

10. Plaintiff does not presently know the true names and capacities of the defendants named as Does 1 through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, suppliers, agents, servants or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's and Class Members' rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them.

11. Each of the Defendants has been or is the principal, officer, director, agent, employee, representative and/or co-conspirator of each of the other defendants and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefor. At an unknown time, some or all of the Defendants entered into a conspiracy with other of the Defendants to commit the wrongful acts described herein. These wrongful acts were committed in furtherance of such conspiracy. Defendants aided and abetted each other in committing the wrongful acts alleged herein. Each of the Defendants acted for personal gain or in furtherance of their own financial advantage in effecting the acts alleged herein.

**First Claim for Relief against Defendant M-I LLC**

**Violation of 15 U.S.C. Section 1681b(b)(2)**

12. Plaintiff realleges all of the preceding paragraphs.

13. 15 U.S.C. Section 1681b(b) regulates the conduct of "persons" who furnish, use, procure or cause to be procured a "consumer report" for employment purposes as follows:

> (b) Conditions for furnishing and using consumer reports for employment purposes
>
> (1) Certification from user
>
> A consumer reporting agency may furnish a consumer report for employment purposes only if --

**First Amended Complaint**

3

    (A) the person who obtains such report from the agency certifies to the agency that--

      (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

      (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

    (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

  (2) Disclosure to consumer

    (A) In general

    Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

      (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

      (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. . . .

14. On or about July 20, 2011, Plaintiff applied for a job with M-I. As part of the application process, M-I presented Plaintiff with a document entitled "Pre-employment Disclosure & Release." (See Exhibit 1.) This form was prepared by PreCheck and provided by PreCheck to M-I and other employers. This form includes a provision purporting to waive or release rights as follows:

> I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.

**First Amended Complaint**

> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc.

15. Plaintiff believes that when M-I received the disclosure form from PreCheck, it reviewed the form and approved it for use in its employee related business processes. At the time that M-I reviewed and approved the disclosure form, M-I knew or recklessly failed to know that the law precluded the use of indemnity and release language in a disclosure form and intentionally decided to use the form despite such fact.

16. M-I procured or caused to be procured a consumer report regarding Plaintiff from PreCheck.

17. M-I violated Section 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes regarding Plaintiff and other class members without making the required disclosure "in a document that consists solely of the disclosure" by using the disclosure and authorization form to obtain indemnity and a release of claims from Plaintiff and other class members.

18. To the extent that M-I is contending that the inclusion of the release and indemnity language in the disclosure and authorization form did not violate the provisions of Section 1681b(b)(2)(A), such interpretation of the provisions of Section 1681b(b)(2)(A) is objectively unreasonable. The language of Section 1681b(b)(2)(A) is plain and clearly ascertainable. According to Section 1681b(b)(2)(A), the disclosure must be "clear and conspicuous" and set forth "in a document that consists solely of the disclosure," with the exception that the required written "authorization may be made on the [same] document." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

19. M-I had no obligation to obtain a waiver of rights from the consumer. In fact, doing so in a disclosure form directly conflicted with the FCRA's clear prohibition on an employer's inclusion of any additional provision, excluding the authorization itself, in the disclosure form. The statutory text of Section 1681b(b)(2)(A) is unambiguous and not susceptible of differing interpretations. (See *Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606; *Singleton v. Domino's Pizza, LLC* (D. Md., Jan. 25, 2012, CIV.A. DKC 11-1823) 2012 WL 245965; *Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-

00028-RLV) 2012 WL 3645324 ("in order to give Congress's inclusion of the word 'solely' meaningful effect, ***the Court agrees that inclusion of the waiver provision was statutorily impermissible***.")

20. The Authorization Form does not derive its content from the pertinent statutory text. There is simply nothing in the statutory text that would validate any claim by M-I that it is proper to include a waiver of rights provision, even one narrowly tailored to M-I's procurement of the applicant's authorization for the consumer report, in a disclosure form. The statute itself cuts exactly the other way. *Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606.

21. A Federal Trade Commission ("FTC") opinion letter from 1998 addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights. The Letter states as follows:

> "While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. ***The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes***. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter")." (*Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606.) (Emphasis added.)

22. An FTC opinion letter from 1997 provides that even where an employer includes a disclosure in an employment application, "an employer that follows this procedure must also clearly and conspicuously disclose in a ***completely separate document*** that a consumer report may be obtained for employment purposes, as required by [section 1681b(b)(2)(A) ]." (Emphasis added.) Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 ("Hawkey FTC Letter"). The Hawkey FTC Letter further clarifies that "***[n]othing else*** may appear on the document that detracts from the disclosure required by [section 1681b(b)(2)(A) ]. An employer

may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the 'separate document" provision of this section." *Id*. (Emphasis added.)

23. An additional FTC opinion letter from 1997 provides as follows:

> The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. ***However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.*** (Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added) ("Steer FTC Letter"). (Emphasis added.)

24. The indemnity and release verbiage in the authorization is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress.

25. The case of *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 699 does not support any claim that it was objectively reasonable for M-I to believe that inclusion of an indemnity and liability release in the disclosure form did not violate Section 1681b(b)(2). That case did not involve the inclusion of a liability release in a disclosure form. In that case, the plaintiff acknowledged that she had signed a disclosure form purporting to authorize her employer to obtain her consumer report, but contended that the form did not clearly and conspicuously disclose that it could be used for employment purposes. The plaintiff purported to identify two deficiencies in the disclosure form, to wit: that it uses the same style of text throughout, without contrasting any portion with text of a different size or color, and that it "buries" the relevant disclosure in a "laundry list" of other information that the form authorizes the Defendants to obtain. *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d

**First Amended Complaint**

689, 697

26. As the Court noted in *Burghy*:

> The FCRA does demand that the revelation that a consumer report may be obtained for employment purposes be made "in a document that consists solely of [that] disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, one reading of Plaintiff's argument might be that including the explanatory language of the other paragraphs alongside the bullet points means that the document does not consist *solely* of the disclosure that a consumer report may be obtained for employment purposes. This argument is also unpersuasive, if it is, in fact, what Plaintiff means to convey. The Act specifically states that the language *authorizing* the employer to obtain a consumer report (the first and second paragraphs) may be included alongside the language *disclosing* that such a report may be used for employment purposes (the bullet points). 15 U.S.C. § 1681b(b)(2)(A)(ii) ("[an employer may obtain a consumer report if] the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)* ) the procurement of the report by that person.") (emphasis added). Including the explanatory language alongside the disclosure language is logical, given their relationship, and the Court cannot conclude that the presence of the former renders the latter inconspicuous. *See Cafarelli v. Yancy,* 226 F.3d 492, 499 (6th Cir.2000) ("[we must interpret] all statutes ... 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ") (quoting *Lake Cumberland Trust, Inc. v. EPA,* 954 F.2d 1218, 1222 (6th Cir.1992)).

27. The Court's decision in *Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) 2012 WL 3645324 does not support M-I's position. ***First, it was issued after the consumer report was generated in this case. Thus, Defendant could not have relied on it.*** Second, the Court acknowledged that an FTC opinion letter specifically found that "a waiver by the consumer of his or her rights under the FCRA" to be in violation of the FCRA in light of section 1681b(b)(2)(A)'s inclusion of the term "solely." Finally, the Court expressly found that "***inclusion of the waiver provision was statutorily impermissible."***

28. In the case of *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3, the Court denied a motion to dismiss in which the plaintiff had alleged a violation of Section 1681b(b)(2) based on the inclusion of a liability release. The Court also found allegations of willfulness were sufficient to withstand a motion to dismiss. The Court reasoned:

**First Amended Complaint**

8

This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability or claims that Avila might have arising from the consumer report and any information contained in it.

Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, *each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure."* . . . *At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that Avila has not stated a claim*.

Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages. Avila seeks statutory damages, which are available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form. Avila alleges that NOW willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶ 41.) *These allegations are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness*. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness). (Emphasis added.)

29. M-I knew or should have known about its legal obligations under the FCRA. M-I obtained or

had available substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer or consumer reporting agency knows about or can easily discover these obligations. M-I either knew or recklessly failed to know the disclosure requirements of Section 1681b(b)(2) and knew or recklessly failed to know that using a disclosure form that included an indemnity and liability waiver was facially contrary to the express language of Section 1681b(b)(2) and all of the administrative guidance available and violated the law. Despite knowing of these legal obligations, M-I intentionally and/or recklessly acted consciously in breaching its known duties and depriving Plaintiff and other Class members their rights under the FCRA.

30. Plaintiff believes that the motivation for the indemnity and release language being included in the disclosure form was to pre-emptively and prospectively discourage and deceive employees about their rights to bring claims against the M-I for wrongfully obtained and wrongfully used consumer report information. Despite knowing that the indemnity and release language was illegal and unenforceable, M-I wrongfully and intentionally included and/or allowed the indemnity and release language to be included in the disclosure form. M-I had knowledge of the law related to the proper form of the disclosure, but, instead, M-I consciously and intentionally included the illegal and unenforceable language in the disclosure form. No reasonable employer would have included such indemnity and release language in the disclosure for any reasons other than for wrongful purposes.

31. As a result of these FCRA violations, M-I is liable for statutory damages from $100 to $1,000 for each violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2), and attorney's fees and costs pursuant to Section 1681n and Section 1681o.

32. 15 U.S.C.A. § 1681p provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—

    (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

    (2) 5 years after the date on which the violation that is the basis for such liability occurs.

33. The violation that is the basis of liability of this claim is the procurement or the causing of the procurement of a consumer report without making the required disclosure "in a document that consists solely of the disclosure" by using the disclosure and authorization form to obtain indemnity and a release of claims from consumers.

34. Plaintiff discovered Defendant M-I's violation(s) within the last two years when he obtained and reviewed his personnel file from Defendant M-I and discovered that Defendant M-I had procured and/or caused to be procured a "consumer report" regarding him for employment purposes based on the illegal disclosure and authorization form.

## CLASS ACTION ALLEGATIONS

35. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for himself and on behalf of a class initially defined as follows:

> **M-I Class**
>
> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom M-I or any of its related companies procured or caused to be procured a consumer report for employment purposes within the period prescribed by FCRA, 15 U.S.C. §1681p without first providing a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes.

36. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are believed to be in excess of 200 and are so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

37. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. These

questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

    a.    Whether Defendants violated Section 1681b(b) by procuring or causing to be procured consumer reports for employment purposes without making the required disclosure "in a document that consists solely of the disclosure" as required by Section 1681b(b)(2)(A)(i).

    b.    Whether Defendants' violations were willful.

38. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's class claims are typical of the claims of Class members. Plaintiff for class certification purposes seeks only statutory and punitive damages. In addition, Plaintiff is entitled to relief under the class claims as the other members of the Class.

39. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the members of the Class Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

40. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to

## Second Claim for Relief against Defendant PreCheck, Inc. and Does 1 through 10

## Violation of the FCRA Section 1681b(b)(1)

41. Plaintiff realleges all of the preceding paragraphs.

42. Defendant PreCheck violated Section 1681b(b)(1) by furnishing consumer reports regarding Plaintiff and other class members for employment purposes to M-I and others without first obtaining from M-I and other persons to whom they furnished such reports a certification by such person as to each consumer report it furnished to such person that such person "has complied with paragraph (2) [of Section 1681b(b)] with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

43. Defendants knew or should have known about their legal obligations under the FCRA. The language of Section 1681b(b)(1) is plain and clearly ascertainable. According to Section 1681b(b)(1)(A), a "consumer reporting agency may furnish a consumer report for employment purposes only if -- (A) the person who obtains such report from the agency certifies to the agency that-- (i) the person *has complied* with paragraph (2) *with respect to the consumer report*, and the person *will comply* with paragraph (3) *with respect to the consumer report* if paragraph (3) becomes applicable; and (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation." (Emphasis added.)

44. By failing to obtain the required specific certification from M-I and other persons to whom Defendants furnished consumer reports as to each consumer report provided before providing the specific consumer report that was the subject of the certification, Defendants violated the express requirement of Section 1681(b)(1).

45. Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of

the Federal Trade Commission. Defendants obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows about or can easily discover these obligations.

46. Despite knowing of these legal obligations, Defendants intentionally or recklessly acted consciously in breaching their known duties and depriving Plaintiff and other Class members their rights under the FCRA. Plaintiff believes that Defendants did not obtain proper and valid certifications before providing consumer reports to those persons to whom they were provided because Defendants did not want to incur the expenses associated with obtaining such certifications as to each consumer as to whom a consumer report was generated and provided by Defendants.

47. As a result of these FCRA violations, Defendants are liable for statutory damages from $100 to $1,000 for each violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2), and attorney's fees and costs pursuant to Section 1681n and Section 1681o.

48. 15 U.S.C.A. § 1681p provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
>   (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
>   (2) 5 years after the date on which the violation that is the basis for such liability occurs.

49. The violation that is the basis of liability of this claim is the provision of a consumer report regarding Plaintiff or the class member without first obtaining the requisite certification from the person to whom the consumer report was being provided that such person, as to each consumer as to which a consumer report was provided, "*has complied* with paragraph (2) *with respect to the consumer report*, and the person *will comply* with paragraph (3) *with respect to the consumer report* if paragraph (3) becomes applicable; and (ii) information from the consumer

report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation."

50. Plaintiff discovered Defendants' violation(s) within the last two years when he obtained and reviewed his personnel file from M-I and discovered that M-I had procured and/or caused to be procured from PreCheck a "consumer report" regarding him for employment purposes and discovered, after PreCheck filed its motion to dismiss in this action, that M-I had not provided the requisite certification to PreCheck regarding Plaintiff's consumer report before PreCheck provided the consumer report to M-I.

51. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for himself and on behalf of the classes initially defined as follows:

> **PreCheck Class**
>
> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom PreCheck, Inc. furnished consumer reports for employment purposes within the period prescribed by FCRA, 15 U.S.C. §1681p without first obtaining from the person to whom PreCheck, Inc. furnished such consumer report a certification that such person had complied with its obligations under Section 1681b(b)(2) as to the subject of the consumer report.

52. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of each of the Classes are believed to be in excess of 1,000 and are so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

53. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

a. Whether Defendants violated Section 1681b(b)(1) by furnishing consumer reports for employment purposes without first obtaining from M-I and other persons to whom they furnished such report a certification by such person as to each consumer report it

furnished that such person "has complied with paragraph (2) [of Section 1681b(b)] with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

　　b.　　Whether Defendants' violations were willful.

54.　**Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's class claims are typical of the claims of Class members. Plaintiff for class certification purposes seeks only statutory and punitive damages. In addition, Plaintiff is entitled to relief under the class claims as the other members of the Class.

55.　**Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the members of the Class Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

56.　**Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

WHEREFORE, Plaintiff demands a jury trial and requests that judgment be entered against all Defendants as follows:

1. For an order certifying the proposed FCRA classes under Federal Rule 23 and appointing Plaintiff and Plaintiff's undersigned counsel of record to represent same;
2. For statutory damages;
3. For punitive damages;
4. For attorney's fees and costs;
5. For interest as provided by law;
6. For such other and further relief as the Court deems proper.

Dated: September 1, 2014     THE DION-KINDEM LAW FIRM

BY: _____
PETER R. DION-KINDEM, P.C.
PETER R. DION-KINDEM
Attorney for Plaintiff Sarmad Syed

# Exhibit 1

**PRE-EMPLOYMENT DISCLOSURE & RELEASE**

(PLEASE PRINT)

**preCheck inc.**
A Background Investigation Company

Tel: 713-861-5959
1-800-999-9861
Fax: 1-800-207-2778

- APPLICANT'S FULL NAME: SARMAD SYED

Any Other Name You Have Worked Under: SAM

Social Security No: [redacted]   Date of Birth: [redacted]

Current Address: 3702 N. LIVE OAK AVE

City: RIALTO   State: CA   Zip: 92377

Driver's License No: [redacted]   State: CA

My Present Employer May Be Contacted For a Job Reference:   Yes ☒   No ☐

Pursuant to the requirements of the Fair Credit Reporting Act, I acknowledge that a credit report, consumer report[2] and/or investigative consumer report[3] may be made in connection with my application for employment with prospective employer (including contract for services). I understand that these investigative background inquiries may include credit, consumer, criminal, driving, prior employment and other reports. These reports may include information as to my character, work habits performance and experience, along with reasons for termination of past employment from previous employers. Further, I understand that prospective employer and PreCheck, Inc., may be requesting information from various Federal, State, and other agencies which maintain records concerning my past activities relating to my driving, credit, criminal, civil and other experiences, as well as claims involving me in the files of insurance companies.

I authorize, without reservation, any party or agency contacted by PreCheck, Inc. to furnish the above mentioned information. I authorize VIE to Provide PreCheck, Inc. or any potential employer of this employment transaction, state records of employment, including information reported by individual employers to the state, including State Employment Security Agency records. This authorization is for this employment transaction only and continues in effect for 365 days from the date of Applicant's execution of this consent unless limited by state law, in which case the authorization continues in effect for the maximum period, not to exceed 365 days, allowed by law. I understand that my refusal to consent shall not be the basis for the denial of employment and that my decision is voluntary and not required by law. A photocopy of this authorization shall have the same effect as the original.

I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained from a third party without verification.

It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc.

I have read and understood the above information, and assert that all information provided by me is true and accurate.

- APPLICANT'S SIGNATURE: _[signature]_   DATE: July 2nd, 2011

If you are denied employment, either wholly or partly because of information contained in a consumer report, a disclosure will be made to you of the name and address of the investigative agency making such report. Upon your written request within a reasonable period of time, the investigative agency compiling the report will make a complete and accurate disclosure of the nature and scope of the investigation.

- The Age Discrimination in Employment Act of 1987 prohibits discrimination on the basis of age with respect to individuals who are at least 40 years of age. This information is for consumer report purposes only.
- A consumer report may consist of employment records, educational verification, licensure verification, driving record, previous address and public records relative to criminal charges.
- An "Investigative Consumer Report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with persons having knowledge.