PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:    (818) 883-4900
Fax:          (818) 883-4902
Email:        peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:    (213) 599-8255
Fax:          (213) 402-3949
Email:        lonnieblanchard@gmail.com

Attorneys for Plaintiff Sarmad Syed

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sarmad Syed, an individual, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>M-I LLC, a Delaware Limited Liability Company, PreCheck, Inc., a Texas Corporation, and Does 1 through 10,<br><br>        Defendants. | **Case No. 14-CV-00742-WBS-BAM**<br><br>**Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant M-I, LLC's Motion to Dismiss Plaintiff's First Amended Complaint**<br><br>**Date:        October 20, 2014**<br>**Time:        2:00 p.m.**<br>**Ctrm:        5** |

# TABLE OF CONTENTS

I.   Plaintiff has alleged sufficient facts to support a finding by a jury that M-I's violation Section 1681b(b)(2) was "willful." ......................................................................... 1

    A.   The allegations of "willfulness" in Plaintiff's original complaint. ..................... 2

    B.   The allegations of willfulness in Plaintiff's First Amended Complaint. ........... 3

    C.   At a minimum, the issue of M-I's willfulness is an issue of fact. ..................... 12

II.  Plaintiff's claims are not barred by the statute of limitations because the pleadings do not reflect that Plaintiff discovered that Defendants actually procured a consumer report regarding him more than two years prior to the filing of this action. ........................... 13

    A.   M-I violated the FCRA when it "procured or caused to be procured" a consumer report regarding Plaintiff because the purported "authorization" was not in a writing consisting solely of the disclosure. ..................................................... 13

    B.   The cases cites by M-I are inapposite, because they involve alleged statutory violations based on actions (signing of loan documents without proper disclosure by lender) of which the plaintiffs in those cases were indisputably aware when they signed the loan documents. ..................................................................... 16

    C.   M-I has not established as a matter of law that Plaintiff was on "inquiry notice" of M-I's violation. ..................................................................................... 17

III. Conclusion. ....................................................................................................................... 18

**Table of Authorities**

**Cases**

*Bittick v. Experian Information Solutions, Inc.*, 419 F.Supp.2d 917, 918-19 (N.D. Tex. 2006) ............. 17

*Cairns v. GMAC Mortgage Corp.,* No. CV 04–01840 PHX(SMM), 2007 WL 735564, *8 (D.Ariz. Mar.5, 2007)........................................................................................................................ 12

*Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D.Ariz.2006)................ 13

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) .............................. 16

*Conder v. Home Sav. of Am.*, 2010 WL 2486765, at *3 (C.D. Cal. June 14, 2010)................................. 16

*Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409, 416 ................................... 12

*Edwards v. Toys ""R" Us* (C.D. Cal. 2007) 527 F.Supp.2d 1197, 1210........................................... 13

*Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) .......................... 12

*Lenox v. Equifax Information Services LLC*, No. 05–01501–AA, 2007 WL 1406914, *6 (D.Or. May 7, 2007) ............................................................................................................................... 12

*Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045]... 8

*Singleton v. Domino's Pizza, LLC* (D. Md., Jan. 25, 2012, CIV.A. DKC 11-1823) 2012 WL 245965 ... 14

*Sparrow v. SLM Corp.*, No. RWT 08-00012 2009 WL 77462, at *3 (D. Md., Jan. 7, 2009).................. 17

*Willey v. J.P. Morgan Chase, N.A.*, 09 CIV. 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009) ... 18


**Statutes**

15 U.S.C. Section 1681b(b) ......................................................................................................... 1

15 U.S.C. Section 1681p.............................................................................................................. 13

**Plaintiff's Opposition to Defendant M-I, LLC's Motion to Dismiss Plaintiff's First Amended Complaint**

**I. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A FINDING BY A JURY THAT M-I'S VIOLATION SECTION 1681B(B)(2) WAS "WILLFUL."**

15 U.S.C. Section 1681b(b) of the FCRA regulates the conduct of "persons" who furnish, use or procure a "consumer report" for employment purposes as follows:

> (b) Conditions for furnishing and using consumer reports for employment purposes
>
>> (1) Certification from user
>>
>> ***A consumer reporting agency may furnish a consumer report for employment purposes only if* --**
>>
>>> (A) the person who obtains such report from the agency certifies to the agency that--
>>>
>>>> (i) the person ***has complied*** with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>>>>
>>>> (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>>>
>>> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.
>>
>> (2) Disclosure to consumer
>>
>>> (A) In general
>>>
>>> Except as provided in subparagraph (B), ***a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer***, unless--
>>>
>>>> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure,*** that a consumer report may be obtained for employment purposes; and
>>>>
>>>> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. . . . (Emphasis added.)

Thus, Section 1681b(b) of the FCRA provides that an employer, such as M-I, can only "procure or cause to be procured" a consumer report for employment purposes if it has complied with its disclosure obligations ("in a document that consists solely of the disclosure") and certified to the Consumer Reporting Agency that it has complied with such obligations and will comply with other obligations, should certain circumstances arise.

In this case, Plaintiff alleges that the "document" authorizing the consumer report was not a document "that consists solely of the disclosure:"

> 14. On or about July 20, 2011, Plaintiff applied for a job with M-I. As part of the application process, M-I presented Plaintiff with a document entitled "Pre-employment Disclosure & Release." (See Exhibit 1.) This form was prepared by PreCheck and provided by PreCheck to M-I and other employers. This form includes a provision purporting to waive or release rights as follows:

>> I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.

>> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc.

Thus, M-I cannot dispute that it violated Section 1681b(b)(2) when it procured or caused to be procured a consumer report regarding Plaintiff for employment purposes without making the required disclosure "in a document that consists solely of the disclosure" by using the disclosure and authorization form to obtain indemnity and a release of claims from Plaintiff.

**A.** **The allegations of "willfulness" in Plaintiff's original complaint.**

In Plaintiff's original complaint, Plaintiff alleged M-I's "willful" violation of Section 1681b(b)(2) as follows:

> 22. Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendants obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable employer or consumer reporting agency knows about or can easily discover these obligations.

**Plaintiff's Opposition to Defendant M-I, LLC's Motion to Dismiss Plaintiff's First Amended Complaint**

23. Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and depriving Plaintiff and other Class members their rights under the FCRA.

In granting M-I's motion to dismiss with leave to amend, the Court opined that these allegations were insufficient to show M-I's willfulness, noting that Plaintiff had not cited "any opinion of the FTC" to support the allegation:

> Plaintiff has not cited any opinion of the FTC to support this contention--perhaps because the FTC's opinion letters suggest that the FCRA may not be so clear-cut. See Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), at *1 (opining that "it is our position that the disclosure notice and the authorization may be combined" under certain circumstances); Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), at *1 ("We believe that including an authorization in the same document with the disclosure . . . will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure.").
>
> . . .
>
> Absent plaintiff's allegation that defendant's conduct was objectively unreasonable, he is left with only bare allegations that defendants' conduct was "willful" and "reckless." But these allegations, which consist only of "labels and conclusions" without factual content, are not sufficient to state a claim that defendants' conduct was willful. Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 686-87 (emphasizing that allegations related to a defendant's state of mind must be based on sufficient factual allegations to state a plausible claim for relief). Even if plaintiff's allegations might be sufficient to state a claim for actual damages, see 15 U.S.C. § 1681o(a), he does not seek actual damages and has therefore has not stated a plausible claim to relief under § 1681n(a). Accordingly, the court must grant defendants' motion to dismiss.

The Court granted the motion to dismiss with leave to amend to allege additional facts to support the allegations of M-I's "willfulness":

> IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED. Plaintiff has twenty days from the date this Order is signed to file an amended Complaint, if he can do so consistent with this Order.

**B.      The allegations of willfulness in Plaintiff's First Amended Complaint.**

In Plaintiff's First Amended Complaint, Plaintiff did allege additional facts demonstrating M-I's willfulness. Plaintiff included citations to FTC opinion letters that existed at the time that unequivocally demonstrated that at the time of the consumer report issued in this case, all applicable legal authority had

found the addition of language other than the actual "authorization" in a disclosure form violated the express language of Section 1681b(b)(2):

> 18. To the extent that M-I is contending that the inclusion of the release and indemnity language in the disclosure and authorization form did not violate the provisions of Section 1681b(b)(2)(A), such interpretation of the provisions of Section 1681b(b)(2)(A) is objectively unreasonable. The language of Section 1681b(b)(2)(A) is plain and clearly ascertainable. According to Section 1681b(b)(2)(A), the disclosure must be "clear and conspicuous" and set forth "in a document that consists solely of the disclosure," with the exception that the required written "authorization may be made on the [same] document." 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

> 19. M-I had no obligation to obtain a waiver of rights from the consumer. In fact, doing so in a disclosure form directly conflicted with the FCRA's clear prohibition on an employer's inclusion of any additional provision, excluding the authorization itself, in the disclosure form. The statutory text of Section 1681b(b)(2)(A) is unambiguous and not susceptible of differing interpretations. . . .

> 20. The Authorization Form does not derive its content from the pertinent statutory text. There is simply nothing in the statutory text that would validate any claim by M-I that it is proper to include a waiver of rights provision, even one narrowly tailored to M-I's procurement of the applicant's authorization for the consumer report, in a disclosure form. The statute itself cuts exactly the other way. . . .

> 21. A Federal Trade Commission ("FTC") opinion letter from 1998 addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights. The Letter states as follows:

> > "While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. ***The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes***. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter")." (*Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606.) (Emphasis added.)

> 22. An FTC opinion letter from 1997 provides that even where an employer includes a disclosure in an employment application, "an employer that follows this procedure must also clearly and conspicuously disclose in a ***completely separate document*** that a consumer report may be obtained for employment purposes, as required by [section 1681b(b)(2)(A) ]." (Emphasis added.) Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 ("Hawkey FTC Letter"). The Hawkey FTC Letter further clarifies that "***[n]othing else*** may appear on the document

that detracts from the disclosure required by [section 1681b(b)(2)(A) ]. An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the 'separate document' provision of this section." *Id.* (Emphasis added.)

23. An additional FTC opinion letter from 1997 provides as follows:

> The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. ***However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.*** (Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added) ("Steer FTC Letter"). (Emphasis added.)

24. The indemnity and release verbiage in the authorization is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress.

25. The case of *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 699 does not support any claim that it was objectively reasonable for M-I to believe that inclusion of an indemnity and liability release in the disclosure form did not violate Section 1681b(b)(2). That case did not involve the inclusion of a liability release in a disclosure form. In that case, the plaintiff acknowledged that she had signed a disclosure form purporting to authorize her employer to obtain her consumer report, but contended that the form did not clearly and conspicuously disclose that it could be used for employment purposes. The plaintiff purported to identify two deficiencies in the disclosure form, to wit: that it uses the same style of text throughout, without contrasting any portion with text of a different size or color, and that it "buries" the relevant disclosure in a "laundry list" of other information that the form authorizes the Defendants to obtain. *Burghy v. Dayton Racquet Club, Inc.* (S.D. Ohio 2010) 695 F.Supp.2d 689, 697

26. As the Court noted in *Burghy*:

> The FCRA does demand that the revelation that a consumer report may be obtained for employment purposes be made "in a document that consists solely of [that] disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, one reading of Plaintiff's argument might be that including the explanatory language of the other paragraphs alongside the bullet points means that the document does not consist *solely* of the disclosure that a consumer report may be obtained for employment purposes. This argument is also unpersuasive, if it is, in fact, what Plaintiff means to convey. The Act specifically states that the language *authorizing* the employer to obtain a consumer report (the first and second paragraphs) may be included

alongside the language *disclosing* that such a report may be used for employment purposes (the bullet points). 15 U.S.C. § 1681b(b)(2)(A)(ii) ("[an employer may obtain a consumer report if] the consumer has authorized in writing (*which authorization may be made on the document referred to in clause (i)* ) the procurement of the report by that person.") (emphasis added). Including the explanatory language alongside the disclosure language is logical, given their relationship, and the Court cannot conclude that the presence of the former renders the latter inconspicuous. *See Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir.2000) ("[we must interpret] all statutes ... 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' ") (quoting *Lake Cumberland Trust, Inc. v. EPA*, 954 F.2d 1218, 1222 (6th Cir.1992)).

27. The Court's decision in *Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) 2012 WL 3645324 does not support M-I's position. ***First, it was issued after the consumer report was generated in this case. Thus, Defendant could not have relied on it.*** Second, the Court acknowledged that an FTC opinion letter specifically found that "a waiver by the consumer of his or her rights under the FCRA" to be in violation of the FCRA in light of section 1681b(b)(2)(A)'s inclusion of the term "solely." Finally, the Court expressly found that "***inclusion of the waiver provision was statutorily impermissible.***"

28. In the case of *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3, the Court denied a motion to dismiss in which the plaintiff had alleged a violation of Section 1681b(b)(2) based on the inclusion of a liability release. The Court also found allegations of willfulness were sufficient to withstand a motion to dismiss. The Court reasoned:

> This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability or claims that Avila might have arising from the consumer report and any information contained in it.

> Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, ***each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure.*** " . . . ***At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to***

*conclude that Avila has not stated a claim*.

Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages. Avila seeks statutory damages, which are available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form. Avila alleges that NOW willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶ 41.) ***These allegations are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness***. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness). (Emphasis added.)

29. M-I knew or should have known about its legal obligations under the FCRA. M-I obtained or had available substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer or consumer reporting agency knows about or can easily discover these obligations. M-I either knew or recklessly failed to know the disclosure requirements of Section 1681b(b)(2) and knew or recklessly failed to know that using a disclosure form that included an indemnity and liability waiver was facially contrary to the express language of Section 1681b(b)(2) and all of the administrative guidance available and violated the law. Despite knowing of these legal obligations, M-I intentionally and/or recklessly acted consciously in breaching its known duties and depriving Plaintiff and other Class members their rights under the FCRA.

30. Plaintiff believes that the motivation for the indemnity and release language being included in the disclosure form was to pre-emptively and prospectively discourage and deceive employees about their rights to bring claims against the M-I for wrongfully obtained and wrongfully used consumer report information. Despite knowing that the indemnity and release language was illegal and unenforceable, M-I wrongfully and

intentionally included and/or allowed the indemnity and release language to be included in the disclosure form. M-I had knowledge of the law related to the proper form of the disclosure, but, instead, M-I consciously and intentionally included the illegal and unenforceable language in the disclosure form. No reasonable employer would have included such indemnity and release language in the disclosure for any reasons other than for wrongful purposes.

Thus, these facts establish that at the time of the consumer report at issue in this case, there was not one single authority that had found that the inclusion of a release and indemnity provision in a disclosure did ***not*** violate the express provisions of Section 1681b(b)(2).

Indeed, the district court in *Smith v. Waverly Partners, LLC* (W.D.N.C., Aug. 23, 2012, 3:10-CV-00028-RLV) 2012 WL 3645324, a case relied upon by M-I (and apparently by this Court), expressly found:

> While such language hardly draws the reader into the proverbial land of lotos-eaters, section 1681b(b)(2)(A) is obviously protective of the disclosure statement's informational segregation. Therefore, in order to give Congress's inclusion of the word "solely" meaningful effect, ***the Court agrees that inclusion of the waiver provision was statutorily impermissible*** . . . (*Id.*, at * 6).

Even though the Court in Smith went on to find, despite the fact that the "waiver provision was statutorily impermissible," that there was no actionable violation of Section 1681b(b)(2), M-I could not have relied upon this decision because it was issued ***after*** the consumer report was generated in this case.

The fact that neither the Ninth Circuit nor any other Circuit court has ruled upon the legality of the inclusion of a release provision in a disclosure form by no means establish that the issue was "uncertain." One need only look to the express language of the statute itself and the FTC opinion letters to know the inclusion of such language was "statutorily impermissible." This is simply not a case where the statutory language is "less than pellucid," or where there has been no guidance from the FTC. Thus, the Supreme Court's decision in *Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 70 [127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045] is inapposite on the issue of M-I's willfulness.[1]

---

[1] In that case, the Court held:

> ***This is not a case in which the business subject to the Act had the benefit of guidance from*** the courts of appeals or ***the Federal Trade Commission (FTC)*** that might have warned it away from the view it took. Before these cases, no court of appeals had spoken

In *Reardon v. ClosetMaid Corp.* (W.D. Pa., Dec. 2, 2013, 2:08-CV-01730) 2013 WL 6231606, the district court granted summary judgment as to liability as to class members who received an "authorization form" that included language purporting to include a liability release. The Court reasoned:

> Turning to the remaining Disclosure Class members who received *only* the Authorization Form it is necessary to determine whether, as it contends, ClosetMaid complied with its disclosure obligations under section 1681b(b)(2)(A). The title of the Authorization Form states in capital letters, "AUTHORIZATION TO OBTAIN A CONSUMER CREDIT REPORT AND RELEASE OF INFORMATION FOR EMPLOYMENT PURPOSES." The first paragraph of the Authorization Form begins as follows:

>> Pursuant to the Fair Credit Reporting Act, I hereby authorize ClosetMaid and its designated agents and representatives to conduct a comprehensive review of my background through a consumer report and/or investigative consumer report to be generated for employment, promotion, reassignment or retention as an employment.

> ECF No. 97–6 at 5. The subsequent paragraph of the Authorization Form explains the type of information that may be included in the consumer report. *Id.* The third paragraph begins, "I [ ] authorize the complete release of these records or data pertaining to me which an individual, company, firm, corporation, or public agency may have." *Id.* The waiver of rights provision appears in the fourth paragraph of the Authorization Form and states as follows: "I hereby release ClosetMaid ... from any and all liability for damages of whatever kind, which may at any time, result to me ... because of compliance with this authorization and request to release." *Id.* Finally, the last paragraph of the Authorization Form states that, "pursuant to the [FCRA], if any adverse action is to be taken based upon the consumer report, a copy of the report and a summary of the consumer's rights will be provided to me if requested." *Id.*

> According to Plaintiffs, ClosetMaid's Authorization Form fails to provide a clear and conspicuous disclosure, in violation of section 1681b(b)(2)(A)(i). In addition, Plaintiffs contend that ClosetMaid's inclusion of a waiver of rights provision facially contravenes section 1681b(b)(2)(A)(ii)'s requirement that the disclosure appear "in a document that consists solely of the disclosure." In support of this assertion, Plaintiffs cite to a Federal

> on the issue, and no authoritative guidance has yet come from the FTC[19] (which in any case has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, see 15 U.S.C. §§ 1681s(a)(1), (e)). Cf. *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (assessing, for qualified immunity purposes, whether an action was reasonable in light of legal rules that were "clearly established" at the time). Given this dearth of guidance **and the less-than-pellucid statutory text**, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability. (Emphasis added.)

Trade Commission ("FTC") opinion letter from 1998, which addresses the sufficiency of a combined disclosure and authorization form containing a waiver of FCRA rights.[5] The Letter states as follows:

> While we believe that you may combine the disclosure and authorization ..., we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result.

Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1 ("Hauxwell FTC Letter"). Plaintiffs also cite to an FTC opinion letter from 1997, which provides that even where an employer includes a disclosure in an employment application, "an employer that follows this procedure must also clearly and conspicuously disclose in a completely separate document that a consumer report may be obtained for employment purposes, as required by [section 1681b(b)(2)(A) ]." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 ("Hawkey FTC Letter"). The Hawkey FTC Letter further clarifies that "[n]othing else may appear on the document that detracts from the disclosure required by [section 1681b(b)(2)(A) ]. An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the 'separate document' provision of this section." *Id.* An additional FTC opinion letter from 1997 provides as follows:

The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure ... will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. *However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.*

Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added) ("Steer FTC Letter").

. . . The court in *Singleton v. Domino's Pizza*, No. 11–1823, 2012 WL 245965 (D.Md. Jan.25, 2012), however, came to a different, and the Court believes correct, conclusion with regard to an employer's inclusion of a waiver of rights provision in a disclosure form. There, the court denied the employer's motion to dismiss the plaintiff's section 1681b(b)(2)(A) claim, finding that "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document." *Singleton,* 2012 WL 245965 at *9.

Neither of these cases is binding on this Court; however, the Court agrees with the analysis in *Singleton,* given the rather direct statutory language at issue. Specifically,

ClosetMaid's inclusion of a release provision in the Authorization Form, which served as a combined disclosure and authorization form for those Disclosure Class members who did *not* receive a Notice Form as part of their employment application, facially violates section 1681b(b)(2)(A)(i). Although the disclosure itself is arguably "clear and conspicuous" given that the title of the Authorization Form appears in bold capital letters and explains that the consumer report is for employment purposes, the Authorization Form simply does not comply with the FCRA's express requirement that the disclosure appear in a document that consists solely of the disclosure (or, at most, a disclosure and authorization only). Even if the Court were to accept ClosetMaid's characterization of the waiver of rights provision as being narrowly tailored to ClosetMaid's procurement of the applicant's authorization for the consumer report, and not a "great distraction", the release verbiage still is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress. Therefore, we grant Plaintiffs' Motion for Summary Judgment on the question of liability as to the members of the Disclosure Class who received only the Authorization Form.[7]

That Plaintiff's allegations are sufficient to support a finding of willfulness is supported by the Court's decision in *Avila v. NOW Health Group, Inc.* (N.D. Ill., July 17, 2014, 14 C 1551) 2014 WL 3537825 at *2-3. In that case, the Court denied a motion to dismiss in which the plaintiff had alleged a violation of Section 1681b(b)(2) based on the inclusion of a liability release. The Court also found allegations of willfulness were sufficient to withstand a motion to dismiss. The Court reasoned:

This section also contains a liability release for any damage Avila may experience as a result of the disclosure of information about him to NOW Foods, as well as a paragraph indicating that he is an at-will employee who can be terminated at any time with or without cause and that a deliberate misstatement on the application will result in his immediate dismissal. In the final paragraph of this section, Avila agrees to comply with all company rules, policies and procedures. As to the Background Report Authorization Form, it states that "I hereby authorize NOW Health Group, Inc., Argus Services, Inc. and their agents to obtain and review the 'consumer report' or 'investigative consumer report' on me described in the [FCRA Statement]." The form, however, also contains a release of liability or claims that Avila might have arising from the consumer report and any information contained in it.

Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, ***each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure "in a document that consists solely of the disclosure".*** . . . ***At the motion to dismiss stage, where all inferences are made in favor of the nonmovant, the Court is unwilling to conclude that Avila has not stated a claim.***

Finally, NOW asserts that Avila has not and cannot allege willfulness, which he must do since he has not alleged actual damages. Avila seeks statutory damages, which are

available only for willful violations of the FCRA. *Murray v. New Cingular Wireless Servs., Inc.,* 523 F.3d 719, 725–26 (7th Cir.2008). The Supreme Court has stated that willful "means recklessness—something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. Specifically, the Supreme Court stated that:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

However, state of mind may be alleged generally. Fed.R.Civ.P. 9(b). Further, it is reasonably inferred that NOW was aware of its disclosure requirement under the FCRA based on the statement in the Background Report Authorization Form. Avila alleges that NOW willfully breached the FCRA because it "violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)" and that its conduct is "contrary to long-standing regulatory guidance and caselaw." (FAC, Dkt. # 36 ¶ 41.) ***These allegations are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness***. *Lavery v. RadioShack Corp.,* 13 C 5818, 2014 WL 2819037, at *2 (N.D.Ill. June 23, 2014) (allegations that amendment to FCRA gave merchants three years to comply with new requirements, which were widely publicized, and merchants were advised by credit card companies of the requirements were sufficient to allege willfulness). (Emphasis added.)

## C.    At a minimum, the issue of M-I's willfulness is an issue of fact.

Plaintiff contends that M-I's willfulness has been established as a matter of law, but if this Court does not agree, at a minimum, the issue of the willfulness of M-I's admitted violation of Section 1681b((b)(2) is an issue of fact that cannot be resolved via M-I's motion to dismiss.

Willfulness under the FCRA is generally a question of fact for the jury. *See Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) ("The reasonableness of the procedures and whether the [insurance] agency followed them will be jury questions in the overwhelming majority of cases," citing *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991)); *Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409, 416; *Lenox v. Equifax Information Services LLC,* No. 05–01501–AA, 2007 WL 1406914, *6 (D.Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Cairns v. GMAC Mortgage Corp.,* No. CV 04–01840 PHX(SMM), 2007 WL 735564, *8 (D.Ariz. Mar.5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of

punitive damages is best left for the trier of fact to determine"); *Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D.Ariz.2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures); *Edwards v. Toys ""R" Us* (C.D. Cal. 2007) 527 F.Supp.2d 1197, 1210.

Thus, it would be clear error for this Court to rule, as a matter of law, that M-I's admitted violation of Section 1681b(b)(2) is not "willful."

**II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE THE PLEADINGS DO NOT REFLECT THAT PLAINTIFF DISCOVERED THAT DEFENDANTS ACTUALLY PROCURED A CONSUMER REPORT REGARDING HIM MORE THAN TWO YEARS PRIOR TO THE FILING OF THIS ACTION.**

**A. M-I violated the FCRA when it "procured or caused to be procured" a consumer report regarding Plaintiff because the purported "authorization" was not in a writing consisting solely of the disclosure.**

As discussed above, M-I's violation of FCRA consisted in its "procurement" of a consumer report by PreCheck without obtaining the requisite compliant authorization from Plaintiff "*in a document that consists solely of the disclosure*."

15 U.S.C. Section 1681p provides that the two-year statute begins to run from the date the plaintiff learns of the "violation that is the basis for [the] liability [sued upon]":

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

The "violation that is the basis of the liability" as to M-I is the actual procurement of the consumer report, not the act of obtaining Plaintiff's signature on a deficient authorization form that M-I might or might not use in the future.

Defendant's contention that the relevant date that starts the two-year period of limitation is the date that Plaintiff *signed* the defective authorization is nonsensical. It is not the signing of the authorization that is the "basis of the liability" alleged herein, because FCRA does not impose liability

for **obtaining** the signature on a defective authorization. Indeed, Plaintiff could not have sued M-I immediately upon his signing of the deficient authorization form, when M-I had not procured a consumer report about Plaintiff.

Rather, the FCRA imposes liability as to a person, such as M-I, who "procures or causes to be procured" a consumer report without making the requisite disclosure and obtaining the requisite authorization. Thus, M-I's violation occurred, at the earliest, only upon the **creation** of the consumer report because until such consumer report was in fact created, no consumer report had been "procured."

In this case, Plaintiff alleges that he first discovered M-I's violation of Section 1681b((b)(2) within two years of the filing of the lawsuit:

> 33. The violation that is the basis of liability of this claim is the procurement or the causing of the procurement of a consumer report without making the required disclosure "in a document that consists solely of the disclosure" by using the disclosure and authorization form to obtain indemnity and a release of claims from consumers.

> 34. Plaintiff discovered Defendant M-I's violation(s) within the last two years when he obtained and reviewed his personnel file from Defendant M-I and discovered that Defendant M-I had procured and/or caused to be procured a "consumer report" regarding him for employment purposes based on the illegal disclosure and authorization form.

Simply put, the date Plaintiff **signed** the deficient authorization is irrelevant to the statute of limitations issue. If, for example, a prospective employer had an employee sign a deficient disclosure and authorization, but never obtained a consumer report, there would be no violation. Similarly, if a prospective employer had an employee sign a deficient disclosure and authorization, but only obtained a consumer report 6 months later, so long as the plaintiff filed the lawsuit within two years of discovering that a consumer report had actually been obtained, the claim would not be time-barred.

In *Singleton v. Domino's Pizza, LLC* (D. Md., Jan. 25, 2012, CIV.A. DKC 11-1823) 2012 WL 245965, the district court rejected the identical statute of limitations argument made by the defendant in that case, holding that the relevant date was the date the plaintiff discovered that the consumer report had been obtained, not when the plaintiff signed the deficient authorization. The Court reasoned:

> The FCRA statute of limitations provides that a plaintiff must file suit "not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. The parties agree that the two year

limitations period applies in this case. According to Domino's, however, the complaint reveals that Plaintiffs filed suit outside of the limitations period. Singleton acknowledges that he completed the BIIC form prior to July 1, 2009, more than two years before filing the original class action complaint. D'Heilly similarly acknowledges that he completed the BIIC form before September 2, 2009, more than two years prior to filing the amended class action complaint. Domino's contends that because counts two and three stem from deficiencies within the BIIC form itself, Plaintiffs were on notice regarding these claims when they completed that form, a time the parties agree is outside the limitations period. While persuasive at first blush, this argument ultimately fails because it misconstrues the plain language of § 1681b(b)(2).

To be timely, Plaintiffs had to file suit under the FCRA within two years of "the date of discovery ... *of the violation that is the basis for such liability." Id.* (emphasis added). The company's limitations argument assumes that the violations in counts two and three occurred when Plaintiffs completed the purportedly deficient BIIC form. ***This assumption, however, neglects to consider that the violation was not complete until Domino's—through its external CRAs—actually obtained Plaintiffs' consumer reports****. See* 15 U.S.C. § 1681b(b)(2) ("[A] person may not procure a consumer report, or cause a consumer report to be procured, ... unless [it complies with these disclosure and authorization requirements]"); *Davis v. Reg'l Acceptance Corp.,* 300 F.Supp.2d 377, 385 (E.D.Va.2002) ("[Section] 1681b(b)(2) prohibits any person from obtaining a consumer report ... without fulfilling enumerated [disclosure and authorization] requirements."). ***Thus, until these background checks were performed, no violation of § 1681b(b)(2) had occurred. See*** 15 U.S.C. § 1681b(b)(2)(A)(i) (explaining that the employer may provide the requisite disclosures "at any time before the report is procured").

***As a result, Plaintiffs could not have discovered the violations underlying counts two and three until they learned that the background checks had taken place.*** Here, the complaint indicates that Singleton and D'Heilly did not discover this information until after July 1, 2009, and September 2, 2009, respectively, time periods within the statute of limitations. . . . (*Id.* ¶¶ 47–48) (noting that D'Heilly learned in October 2009 that his termination resulted from information uncovered during the background check). Accordingly, contrary to the company's contention, counts two and three are timely. (Bolded emphasis added.)

As a result, M-I's statute of limitation argument is without merit. The fact that Plaintiff signed a deficient authorization more than two years before the complaint was filed clearly does not mean the Plaintiff was aware that violation upon which M-I's liability is predicated had occurred at or around the time that he signed the deficient form. Indeed, unless and until a consumer report was actually generated, no violations arguably had occurred. Because Plaintiff alleges in his Complaint that he first became aware of Defendant's violations within two years of the filing of the action, his claim is not time-barred.

**B.** **The cases cites by M-I are inapposite, because they involve alleged statutory violations based on actions (signing of loan documents without proper disclosure by lender) of which the plaintiffs in those cases were indisputably aware when they signed the loan documents.**

Defendant M-I cites numerous cases in an attempt to analogize the Truth in Lending Act (TILA) with the FCRA. However, because the nature of the TILA infractions are fundamentally different from the FCRA violations alleged in this case, the cases M-I cites are not applicable. For example, M-I cites *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) to support its argument that the statute of limitations for Plaintiff's FCRA claim should have begun immediately upon Plaintiff's signing the faulty disclosure and authorization form provided by M-I. The Courts in *Cervantes* and in the other TILA cases cited by M-I held that because plaintiffs, with reasonable diligence, could have discovered the faulty disclosures upon signing the loan documents, the statute of limitations began to run once the plaintiffs signed the documents.

*Cervantes* and the other TILA cases are fundamentally different from the instant case, however, because the nature of the violation in the TILA cases is different from the violations alleged in this case. A TILA violation that is based on a failure to disclose occurs immediately when the borrower enters into the loan transaction, because it is at that time that the transaction giving rise to liability occurs. Thus, there would be no violation under TILA if the borrower never entered into the loan transaction. As the court held in *Conder v. Home Sav. of Am.*, 2010 WL 2486765, at *3 (C.D. Cal. June 14, 2010), "The [TILA] violation occurs upon consummation of the loan. A loan is consummated at the time that a consumer becomes contractually obligated on a credit transaction." (internal quotes and citations omitted). Once a loan recipient signs the loan documents, he or she becomes contractually obligated and a TILA violation occurs if there are not proper disclosures.

Thus, in TILA cases, the plaintiff/borrower necessarily knows that the loan transaction has occurred, because he has signed the loan papers. The Courts have therefore held that the borrower is deemed to know whether the requisite disclosures have been made because the borrower knows what disclosures have been provided to him.

In this case, however, the FCRA violations alleged occur only when a consumer report is actually ***procured.*** Thus, while an employee knows he has signed an authorization for a consumer report, the fact that he signs such authorization does not mean that a report has been or will ever be in fact procured. Moreover, Plaintiff was not involved in the actual "procurement" process, which was entirely effected by Defendants outside of Plaintiff's knowledge. While the TILA plaintiffs knew that they were entering into the loan transaction because they were parties to such transaction, Plaintiff here was not aware that a credit report had ever actually been issued until he actually reviewed his personnel file.

Because the FCRA violations alleged in this case did not occur until a credit report had actually been obtained, and Plaintiff only discovered that such a report had been obtained when he had reviewed his personnel file, which was less than two years before this lawsuit was filed, Plaintiff's claims are not time-barred.

M-I's reliance on *Bittick v. Experian Information Solutions, Inc.*, 419 F.Supp.2d 917, 918-19 (N.D. Tex. 2006) and *Sparrow v. SLM Corp.*, No. RWT 08-00012 2009 WL 77462, at *3 (D. Md., Jan. 7, 2009) is unavailing because these cases are easily distinguishable from this case. In *Bittick*, plaintiff began reporting inaccuracies in her credit report on May 11, 2001, but waited until June 27, 2005 to file suit against Experian for FCRA violations. (419 F.Supp.2d at 918-19.) In *Sparrow*, plaintiff drafted and sent a letter to Equifax disputing the information contained in her credit report on February 3, 2003, but did not file her FCRA claim until January 2008. (No. RWT 08-00012 2009 WL 77462, at *3.) Whereas these plaintiffs had actual knowledge of a FCRA claim more than two years before filing, Plaintiff here had no knowledge of any potential claim until he actually reviewed his personnel file, and filed suit within the statutory period.

### C. M-I has not established as a matter of law that Plaintiff was on "inquiry notice" of M-I's violation.

M-I's argument that Plaintiff's claim should be time-barred because Plaintiff was on "inquiry notice" of the FCRA violation on July 20, 2009 (the date Plaintiff signed the disclosure form), more than two years before Plaintiff filed his complaint, is also without merit. In support of support of this

argument, M-I relies on *Willey v. J.P. Morgan Chase, N.A.*, 09 CIV. 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009) and similar cases. In *Willey*, the Court found that plaintiff was on inquiry notice of the FCRA violation when Chase issued a press release and national newspapers reported the incident that gave rise to the FCRA claim. (2009 WL 1938987 at *5.) This is clearly distinguishable from the facts alleged in Plaintiff's complaint. Whereas the plaintiff in *Willey* could have discovered his claim with reasonable diligence, Plaintiff here had no way of knowing of his FCRA claim until he actually reviewed his personnel file. ***In fact, as this Court recognized in its comments made during oral argument on M-I's motion to dismiss the original Complaint, until Plaintiff knew that a consumer report had been prepared, Plaintiff would have had no legal basis to sue M-I.*** Plaintiff was not on inquiry notice when he signed the faulty disclosure form because, as discussed above, the FCRA violation did not occur until the report was generated, not when he signed the disclosure papers.

## III. CONCLUSION.

Plaintiff has alleged sufficient facts sufficient to establish that M-I willfully violated its obligations under Section 1681b((b)(2) by including a release and indemnity provision in the disclosure and authorization form it requested Plaintiff to sign and procured a consumer report based on such deficient authorization. The language of the statute is clear, and there was no existing authority that supported any reading of the statute that allowed such language. At a minimum, the issue of M-I's willfulness cannot be resolved on a motion to dismiss.

Plaintiff's claim against M-I is not time-barred. Plaintiff discovered that M-I had in fact obtained a consumer report about him, which is the violation upon which M-I's liability is predicated, within two years of filing this lawsuit.

Defendant's motion must be denied.

Dated: October 2, 2014                    THE DION-KINDEM LAW FIRM

BY: _____
        PETER R. DION-KINDEM, P.C.
        PETER R. DION-KINDEM
        Attorney for Plaintiff Sarmad Syed