1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10
                            ----oo0oo----
11

12  SARMAD SYED, an individual,        CIV. NO. 1:14-742 WBS BAM
    on behalf of himself and all
13  others similarly situated,         MEMORANDUM AND ORDER RE: MOTION
                                       TO DISMISS
14            Plaintiffs,

15       v.

16  M-I LLC, a Delaware Limited
    Liablity Company; PRECHECK,
17  INC., a Texas Corporation;
    and DOES 1-10,
18
              Defendants.
19

20

21                          ----oo0oo----

22          Plaintiff Sarmad Syed brought this putative class-

23  action lawsuit against defendants M-I, LLC ("M-I") and PreCheck,

24  Inc. ("PreCheck"), in which he alleges that defendants failed to

25  comply with federal credit reporting laws while conducting pre-

26  employment background checks.  The court dismissed plaintiff's

27  initial Complaint pursuant to Federal Rule of Civil Procedure

28  12(b)(6) for failure to state a claim upon which relief can be

                                1

1   granted. (Aug. 8, 2014 Order (Docket No. 34).) Plaintiff has

2   filed a First Amendment Complaint ("FAC"), (Docket No. 36), and

3   defendants again move to dismiss the FAC pursuant Rule 12(b)(6)

4   for failure to state a claim, (Docket Nos. 38, 39).

5   I.   Factual and Procedural History

6        Plaintiff applied for a job with M-I on July 20, 2011.

7   (FAC ¶ 14.) During the application process, plaintiff filled out

8   and signed a one-page form entitled "Pre-Employment Disclosure

9   and Release." (Id.) That form, which PreCheck allegedly

10  prepared and provided to M-I, included the following language:

11          I understand that the information obtained will be
            used as one basis for employment or denial of
12          employment. I hereby discharge, release, and
            indemnify prospective employer, PreCheck, Inc., their
13          agents, servants, and employees, and all parties that
            rely on this release and/or the information obtained
14          with this release from any and all liability and
            claims arising by reason of the use of this release
15          and dissemination of information that is false and
            untrue if obtained by a third party without
16          verification.

17          It is expressly understood that the information
            obtained through the use of this release will not be
18          verified by PreCheck, Inc.

19

20  (Id.)

21        At some point "within the last two years," plaintiff

22  allegedly obtained and reviewed his personnel file. (Id. ¶¶ 34,

23  50.) He discovered that defendants had procured a consumer

24  credit report about him. (Id.) Based on this report, plaintiff

25  alleges two violations of the Fair Credit Reporting Act ("FCRA"),

26  15 U.S.C. §§ 1681 et seq. First, plaintiff alleges that M-I

27  procured this report unlawfully because the disclosure form he

28  signed included the extra language set forth above, and thus

2

1  appeared in a form that did not consist "solely of the

2  disclosure," as required by the FCRA.  (Id. ¶ 17.)  Second,

3  plaintiff alleges that PreCheck violated the FCRA by furnishing

4  M-I with a consumer report on plaintiff without first obtaining a

5  certification from M-I stating that M-I "has complied" with its

6  statutory obligations "with respect to the consumer report."

7  (Id. ¶ 42.)

8  II.  Legal Standard

9         On a motion to dismiss under Rule 12(b)(6), the court

10  must accept the allegations in the complaint as true and draw all

11  reasonable inferences in favor of the plaintiff.  See Scheuer v.

12  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

13  Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

14  319, 322 (1972).  To survive a motion to dismiss, a plaintiff

15  must plead "only enough facts to state a claim to relief that is

16  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

17  544, 570 (2007).  This "plausibility standard," however, "asks

18  for more than a sheer possibility that a defendant has acted

19  unlawfully," and where a plaintiff pleads facts that are "merely

20  consistent with a defendant's liability," it "stops short of the

21  line between possibility and plausibility."  Ashcroft v. Iqbal,

22  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

23         Plaintiff seeks statutory and punitive damages for

24  violations of the FCRA, (FAC ¶¶ 31, 47), which requires him to

25  allege that defendants "willfully fail[ed] to comply with the

26  requirements of [the FCRA]."  15 U.S.C. § 1681n(a) (emphasis

27  added).  In Safeco Insurance Company of America v. Burr, the

28  Supreme Court held that the FCRA's use of the term "willfully"

1    requires a plaintiff to show that the defendant's conduct was

2    intentional or reckless.  551 U.S. 47, 57 (2007).  Recklessness

3    consists of "action entailing an unjustifiably high risk of harm

4    that is either known or so obvious that it should be known."  Id.

5    at 68 (citation and internal quotation marks omitted).  In other

6    words, "a company subject to FCRA does not act in reckless

7    disregard of it unless the action is not only a violation under a

8    reasonable reading of the statute's terms, but shows that the

9    company ran a risk of violating the law substantially greater

10   than the risk associated with a reading that was merely

11   careless."  Id. at 69.  A defendant's violation of the FCRA is

12   not reckless simply because its understanding of a statutory

13   obligation is "erroneous"; instead, a plaintiff must allege, at a

14   minimum, that the defendant's reading of the FCRA is "objectively

15   unreasonable."  Id.

16          In applying this standard, the Supreme Court considered

17   whether the defendant's interpretation "has a foundation in the

18   statutory text" and whether the defendant had "guidance from the

19   courts of appeals or the Federal Trade Commission (FTC) that

20   might have warned it away from the view it took."  Id. at 69-70.

21   Noting "a dearth of guidance and . . . less-than-pellucid

22   statutory text," the Court declined to find the defendant's

23   interpretation objectively unreasonable.  Id. at 70.  Finally,

24   the Court observed that the presence or absence of subjective bad

25   faith made no difference "where, as here, the statutory text and

26   relevant court and agency guidance allow for more than one

27   reasonable interpretation."  Id. at 70 n.20.

28          Safeco's analysis strongly suggests that the issue of

4

1  whether a defendant's reading of the FCRA was "objectively

2  unreasonable" is a question of law.[1]  See Van Straaten v. Shell

3  Oil Prods. Co., 678 F.3d 486, 490-01 (7th Cir. 2012) (stating

4  that the Safeco Court "treated willfulness as a question of

5  law").  The Court held that there was no need to remand the case

6  for further factual development because, as a matter of law,

7  "Safeco's misreading of the statute was not reckless."  Safeco,

8  551 U.S. at 71.  And perhaps most tellingly, the Court analogized

9  this inquiry to the "clearly established" inquiry required under

10 its qualified immunity precedents--an inquiry that is legal in

11 nature.  See id. at 70 (citing Saucier v. Katz, 533 U.S. 194, 202

12 (2001)).

13         Accordingly, courts may consider whether a particular

14 interpretation was "objectively unreasonable" upon a motion to

15 dismiss.  See, e.g., Goode v. LexisNexis Risk & Info. Analytics

16 Grp., Inc., 848 F. Supp. 2d 532, 543-46 (E.D. Pa. 2012)

17 (considering court cases and FTC guidance on the question of

18 willfulness for purposes of a motion to dismiss); see also Long

19 v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 378 (3d Cir. 2012)

20 (affirming dismissal upon a motion to dismiss because a

21 defendant's interpretation "although erroneous, was at least

22 objectively reasonable"); Shlahtichman v. 1-800 Contacts, Inc.,

23

---

24         [1]    Some courts have treated the question of whether a
defendant's conduct was "willful" as a factual inquiry, see,
25 e.g., Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1210 (C.D.
   Cal. 2007) (citing cases treating willfulness as a question of
26 fact), but these cases either predate Safeco or are
   distinguishable from the situation in Safeco and the one here
27 because the relevant statute they addressed was "not ambiguous or
   susceptible to conflicting interpretations," see id. at 1209.
28

5

1  615 F.3d 794, 803 (7th Cir. 2010) (same).

2  III. <u>M-I's Motions to Dismiss Plaintiff's Disclosure Claim</u>

3              Plaintiff alleges that M-I's interpretation of the FCRA

4  to permit the inclusion of release and indemnity language in the

5  disclosure form was "objectively unreasonable," (FAC ¶ 18), and

6  supports this allegation by pointing to the "plain and clearly

7  ascertainable" statutory language as well as three FTC opinion

8  letters and several district court opinions on the subject, (FAC

9  ¶¶ 19-23).

10             This court previously rejected plaintiff's contention

11  that the FCRA's language is as clear as he claims.  (Aug. 8, 2014

12  Order at 6-7.)  The relevant portion of § 1681b(b) requires that

13  the document "consists solely of the disclosure."  15 U.S.C.

14  § 1681b(b)(2)(A)(i).  But the immediately following subsection

15  allows the consumer's authorization to "be made on the document

16  referred to in clause (i)"--that is, the same document as the

17  disclosure.  15 U.S.C. § 1681b(b)(2)(A)(ii).  Thus, the statute

18  itself suggests that the term "solely" is more flexible than at

19  first it may appear.  This "less-than-pellucid" statutory

20  language weighs in favor of finding that M-I's interpretation was

21  objectively reasonable.  <u>Safeco</u>, 551 U.S. at 70.

22             The next relevant question becomes whether, at the time

23  M-I used the form, "guidance from the courts of appeals or the

24  Federal Trade Commission . . . warned it away from the view it

25  took."  <u>Id.</u>  But direction from the FTC must be "authoritative

26  guidance."  <u>Id.</u>  For instance, the <u>Safeco</u> Court rejected the use

27  of an informal letter written by an FTC staff member because it

28  "did not canvass the issue" and "explicitly indicated it was

                                    6

1    merely 'an informal staff opinion . . . not binding on the

2    Commission.'"   Id. at 70 n.19.

3         Just like the letter rejected by the Supreme Court in

4    Safeco, all three letters cited for support by plaintiff

5    explicitly indicate they are informal staff opinions.   See Letter

6    from William Haynes, Att'y, Div. of Credit Practices, Fed. Trade

7    Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12,

8    1998), 1998 WL 34323756 (F.T.C.), at *3 ("The views that are

9    expressed above are those of the Commission's staff and not the

10   views of the Commission itself."); Letter from William Haynes,

11   Att'y, Div. of Credit Practices, Fed. Trade Comm'n, to Harold

12   Hawkey, Employers Ass'n of N.J. (Dec. 18, 1997), 1997 WL 33791224

13   (F.T.C.), at *3 ("The above views constitute informal staff

14   opinions and are advisory in nature and not binding upon the

15   Commission."); Letter from Cynthia Lamb, Investigator, Div. of

16   Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones

17   Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227

18   (F.T.C.), at *2 ("The opinions set forth in this letter are those

19   of the staff, and are not binding on the Commission.").   These

20   letters lack the authority needed to support plaintiff's

21   allegation post-Safeco.

22        The district court opinions cited by plaintiff also

23   cannot support his position because all of the decisions were

24   issued after M-I used its form in 2011.   See Reardon v.

25   Closetmaid Corp., Civ. No. 2:08-1730, 2013 WL 6231606 (W.D. Pa.

26   Dec. 2, 2013); Singleton v. Domino's Pizza, Civ. No. 11-1823,

27   2012 WL 245965 (D. Md. Jan. 25, 2012); Waverly Partners, Civ. No.

28   3:10-28, 2012 WL 3645324 (W.D.N.C. Aug. 23, 2012).   These cases

1   could not have warned M-I away from the view it took under the

2   Safeco standard if they had not yet come into existence.

3        None of the legal authority cited by plaintiff suffices

4   to make M-I's understanding of its obligation under the FCRA at

5   the relevant time objectively unreasonable.  Given this "dearth

6   of authority" and the "less-than-pellucid" statutory text, the

7   court finds no support for plaintiff's allegation of willfulness

8   and it must grant M-I's motion to dismiss.

9                        *     *     *

10       While leave to amend must be freely given, the court is

11  not required to permit futile amendments.  See DeSoto v. Yellow

12  Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Klamath-

13  Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276,

14  1293 (9th Cir. 1983); Reddy v. Litton Indus., Inc., 912 F.2d 291,

15  296-97 (9th Cir. 1990); Rutman Wine Co. v. E. & J. Gallo Winery,

16  829 F.2d 729, 738 (9th Cir. 1987).  "[A] proposed amendment is

17  futile only if no set of facts can be proved under the amendment

18  to the pleadings that would constitute a valid and sufficient

19  claim or defense."  Miller v. Rykoff-Sexton, Inc., 845 F.2d 209,

20  214 (9th Cir. 1988).

21       Having already given plaintiff leave to amend his

22  Complaint once, the parties have had ample opportunity to brief

23  this court on the issue of willfulness.  Because the court finds

24  that M-I's interpretation of the FCRA is not objectively

25  unreasonable as a matter of law, no set of facts will allow

26  plaintiff to plausibly allege that M-I "willfully" violated the

27  FCRA under the Safeco standard.  Accordingly, any proposed

28  amendment would be futile, and the court will not grant plaintiff

                            8

further leave to amend.

IV.  <u>PreCheck's Motion to Dismiss Plaintiff's Certification Claim</u>

   A. <u>Plaintiff Alleges a Willful Violation of the FCRA</u>

       Plaintiff alleges that PreCheck "intentionally or recklessly" breached its obligation under § 1681b(b)(1) of the FCRA.  (FAC ¶¶ 42-43.)  This obligation, plaintiff argues, required PreCheck to obtain a specific certification from M-I <u>after</u> M-I had provided a disclosure form to plaintiff and received plaintiff's authorization but <u>before</u> it furnished M-I with the consumer report.  (<u>See</u> FAC ¶ 49.)  Plaintiff's understanding relies on § 1681b(b)(1)'s use of the phrase "has complied with paragraph (2) with respect to the consumer report." 15 U.S.C. § 1681b(b)(1)(A)(i).[2]

       PreCheck argues it interpreted § 1681b(b)(1) as allowing it to obtain a one-time "prospective, blanket certification" from M-I.  (PreCheck's Mem. at 9 (Docket No. 38-1).)  It points to a document purportedly provided by M-I to PreCheck in June 2002 that promised M-I would "preform legal obligations [under the FCRA]," including that it would "make a clear and conspicuous written disclosure to the consumer before

_____

       [2]    Section 1681b(b)(1) provides in relevant part:

   A consumer reporting agency may furnish a consumer report for employment purposes only if--

    (A) the person who obtains such report from the agency certifies to the agency that--

    (i) the person <u>has complied with paragraph (2) with respect to the consumer report</u>, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable . . ."

15 U.S.C. § 1681b(b)(1) (emphasis added).

1  the report is obtained, in a document that consists solely of the

2  disclosure, that a report may be obtained."  (See id. at 12; Do

3  Decl. Ex. A (Docket No. 10-4).)

4          Unlike the interpretation analyzed in Safeco, however,

5  the court sees no apparent foundation in the text of

6  § 1681b(b)(1) for PreCheck's belief that it could rely on M-I's

7  prospective certification of compliance with paragraph (2).  See

8  Safeco 551 U.S. at 69-70 ("While we disagree with Safeco's

9  analysis, we recognize that its reading has a foundation in the

10  statutory text and a sufficiently convincing justification to

11  have persuaded the District Court to adopt it and rule in

12  Safeco's favor." (internal citations omitted)).  Prospective

13  certification actually runs counter to § 1681b(b)(1)'s use of the

14  phrase "has complied," which clearly appears to refer

15  retrospectively to an action already taken.  15 U.S.C.

16  § 1681b(b)(1) ("the person has complied with paragraph (2)"

17  (emphasis added)).  It makes no sense for M-I to certify that it

18  "has complied" with the FCRA before having done so; M-I must wait

19  until it actually "has complied" to certify its actions.  Even if

20  the statute's language is not entirely "pellucid," it is clear

21  enough to foreclose the use of a prospective certification as to

22  compliance with paragraph (2).

23          This understanding is reinforced by the statute's next

24  clause, which requires certification that "the person will comply

25  with paragraph (3) . . . if paragraph (3) becomes applicable"--a

26  sharp contrast of language suggesting that Congress contemplated

27  prospective certification as to paragraph (3), but not paragraph

28  (2).  15 U.S.C. § 1681b(b)(1)(A)(i).  Accordingly, whether or not

1  PreCheck received a prospective certification from M-I in 2002,

2  the plain language of § 1681b(b)(1) supports plaintiff's

3  allegation that PreCheck intentionally or recklessly violated the

4  FCRA by failing to secure a certification that M-I "has complied"

5  with paragraph (2).

6         PreCheck's actions might be objectively reasonable if

7  it could point to some court decision or "authoritative guidance"

8  from the FTC that it relied upon when deciding to use a

9  prospective, blanket certification.  That is, PreCheck must show

10  that it had some "sufficiently convincing justification" for

11  thinking that a prospective certification fulfilled its

12  obligation under the FCRA.  Safeco 551 U.S. at 69-70.  But

13  PreCheck has not provided, and the court cannot find, any court

14  decision addressing the use of prospective certifications under

15  § 1681b(b)(1).

16         PreCheck does offer two FTC opinion letters,

17  (Precheck's Mem. at 9-10 (Docket No. 39)), but these letters do

18  not authorize, or even directly address, the use of prospective

19  certification.  The first letter only confirms that a consumer

20  reporting agency "is not required to maintain a record of the

21  consumer's underlying written authorization" so long as it

22  "receive[s] the employer's certification before furnishing a

23  consumer report for employment purposes."  (See Letter from Shoba

24  Kammula, Fed. Trade Comm'n, to Stephen Kilgo, President, Intelnet

25  Inc. (July 28, 1998), Muro Decl. Ex. A (Docket No. 39-3).)  The

26  second letter states that a consumer reporting agency must obtain

27  certification "that the client obtaining the report is in

28  compliance" with 15 U.S.C. § 1681b(b)(2).  (See Letter from

1   William Haynes, Att'y , Div. of Credit Practices, Fed. Trade

2   Comm'n, to John Beaudette, Operations Manager, Employment

3   Screenings Servs. (June 9, 1998), Muro Decl. Ex. B.)  When read

4   in context, the use of the phrase "in compliance" does not

5   authorize prospective certification.  And even if it did, neither

6   letter contains the level of "authoritative guidance" required by

7   Safeco.  (See Letter from Shoba Kammula, Fed. Trade Comm'n, to

8   Stephen Kilgo, President, Intelnet Inc. (July 28, 1998), Muro

9   Decl. Ex. A ("This is an informal staff opinion and is not

10  binding on the Commission."); Letter from William Haynes, Att'y ,

11  Div. of Credit Practices, Fed. Trade Comm'n, to John Beaudette,

12  Operations Manager, Employment Screenings Servs. (June 9, 1998),

13  Muro Decl. Ex. B ("The statements contained in this letter

14  represent the opinions of the Commission's staff and are advisory

15  in nature.").)

16          Finally, PreCheck points to several court cases

17  allowing "blanket certifications" under a different subsection of

18  the FCRA--15 U.S.C. § 1681e--and argues that these cases support

19  its conclusion that prospective, blanket certifications can be

20  used under § 1681b(b)(1) as well.  (See Pl.'s Mem. at 10-11

21  (citing Boothe v. TRW Credit Data, 557 F. Supp. 66, 71 (S.D.N.Y.

22  1982); Hiemstra v. TRW, Inc., 195 Cal. App. 3d 1629, 1634 (2d

23  Dist. 1987).)  However, § 1681e contains significantly different

24  language from § 1681b(b)(1).  It contains concurrent- and

25  prospective-looking language, while § 1681b(b)(1) contains

26  retrospective language.  Compare 15 U.S.C. § 1681e (requiring a

27  user of consumer reports to "certify the purposes for which the

28  information is sought, and certify that the information will be

1 used for no other purpose" (emphasis added), with 15 U.S.C.

2 § 1681b(b)(1) (requiring that a user certify that "the person has

3 complied with paragraph (2)" (emphasis added)).  This distinction

4 defeats the idea that PreCheck could have reasonably relied on

5 cases interpreting § 1681e.

6        Unlike with M-I, the dearth of authority interpreting

7 § 1681b(b)(1) works against PreCheck because PreCheck cannot

8 justify its non-compliance with the plain meaning of the

9 statutory text.  Accordingly, the court finds dismissal for

10 failure to state a claim against PreCheck inappropriate.[3]

11    B. The Statute of Limitations Does Not Preclude Plaintiff's

12       Claim

13        An action under the FCRA must be filed within the

14 earlier of: "(1) 2 years after the date of discovery by the

15 plaintiff of the violation that is the basis for such liability;

16 or (2) 5 years after the date on which the violation that is the

17 basis for such liability occurs."  15 U.S.C. § 1681p.

18        In Merck & Co., Inc. v. Reynolds, 559 U.S. 633 (2010),

19 the Supreme Court made clear that, when a federal statute of

20 limitations incorporates a "discovery" rule, "the limitations

21 period does not begin to run until the plaintiff thereafter

22 discovers or a reasonably diligent plaintiff would have

23 discovered 'the facts constituting the violation.'"  Id. at 648

24 (quoting 28 U.S.C. § 1658(b)(1)).  Notably, the defendant in

25 Merck & Co. attempted to argue that the limitations period runs

26

27        [3]  Any language in the court's August 8, 2014 Order that
appears inconsistent with this determination shall be
28 disregarded.

1    from the date the plaintiff gains so-called "inquiry notice,"

2    which the defendant took to mean "the point at which a plaintiff

3    possesses a quantum of information sufficiently suggestive of

4    wrongdoing that he should conduct a further inquiry."  Id. at

5    650.  The Supreme Court rejected this view.  Id. at 650-53.  The

6    Court held that the statute of limitations does not necessarily

7    run from the point a plaintiff has "inquiry notice."  Id. at 653

8    ("We consequently find that the 'discovery' of facts that put a

9    plaintiff on 'inquiry notice' does not automatically begin the

10   running of the limitations period."); see also Strategic

11   Diversity, Inc. v. Alchemix Corp., 666 F.3d 1197, 1206 (9th Cir.

12   2012) (explaining that Merck & Co. "held that the ultimate burden

13   is on the defendant to demonstrate that a reasonably diligent

14   plaintiff would have discovered the facts constituting the

15   violation").

16          With regard to the claim against PreCheck, the facts

17   allegedly constituting the violation are PreCheck's furnishing of

18   a consumer report on plaintiff without first receiving

19   § 1681b(b)(1) certification from M-I.  Nothing on the disclosure

20   and authorization form signed by plaintiff necessarily alerts

21   plaintiff to a lack of § 1681b(b)(1) certification or otherwise

22   constitutes "discovery by the plaintiff of the violation."  15

23   U.S.C. § 1681p.  To the contrary, any alleged violation of §

24   1681b(b)(1)on the part of PreCheck would have had to occur after

25   plaintiff signed the form.  Further, PreCheck advances no reason,

26   and the court can see no reason, why a reasonably diligent

27   plaintiff would have necessarily discovered the § 1681b(b)(1)

28   violation on September 19, 2011--the date plaintiff stopped

14

1  working for M-I.  Because the court must accept the truth of

2  plaintiff's allegation that he discovered the violation "within

3  the last two years" for purposes of this motion, (FAC ¶ 50), the

4  court will deny PreCheck's motion to dismiss on this ground.[4]

5          IT IS THEREFORE ORDERED that:

6          (1) the motion of defendant M-I LLC to dismiss this

7  action as against it be, and the same hereby is, GRANTED, without

8  leave to amend;

9          (2) the motion of defendant PreCheck, Inc. to dismiss

10 this action as against it be, and the same hereby is, DENIED; and

11         (3) the motion of defendant PreCheck to strike be, and

12 the same hereby is, DENIED without prejudice.

13 Dated:  October 22, 2014

14 _____

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20         [4]    PreCheck also moves to strike plaintiff's class

21 allegation pursuant to Federal Rule of Civil Procedure 12(f) on
the basis that it defines an impermissible "fail-safe" class.

22 See Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th
Cir. 2012) ("[A] 'fail-safe' class is one that includes only

23 those who are entitled to relief . . . [and] allow[s] putative
class members to seek a remedy but not be bound by an adverse

24 judgment--either those class members win or, by virtue of losing,
they are not in the class and are not bound.") (internal

25 quotation marks and citations omitted).  Because the issue of
class certification is not presently before it, the court will

26 deny PreCheck's motion to strike without prejudice.  PreCheck may

27 assert its fail-safe arguments in opposition to a motion for
class certification or, if plaintiff fails to move for

28 certification, renew its motion to strike prior to trial.