UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SARMAD SYED, an individual, on behalf of himself and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>M-I LLC, a Delaware Limited Liablity Company; PRECHECK, INC., a Texas Corporation; and DOES 1-10,<br><br>                Defendants. | CIV. NO. 1:14-742 WBS BAM<br><br>MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |

----oo0oo----

        Plaintiff Sarmad Syed brought this putative class action lawsuit against M-I, LLC ("M-I") and PreCheck, Inc. ("PreCheck"), alleging that they violated federal credit reporting laws while conducting pre-employment background checks. On November 4, 2014, the court dismissed plaintiff's action as to M-I. (Docket Nos. 46, 49-50.)  Plaintiff subsequently reached a settlement with PreCheck, and the court granted preliminary

1

1   approval of the class action settlement on September 18, 2015.

2   (Docket Nos. 70-73.)  Presently before the court is plaintiff's

3   motion for final approval of the class action settlement.

4   (Docket No. 76.)

5   I. Factual and Procedural Background

6           Plaintiff applied for a job with M-I on July 20, 2011.

7   (First Am. Compl. ("FAC") ¶ 14 (Docket No. 36).)  As part of the

8   application process, plaintiff received and signed a one-page

9   disclosure form.  (Id.)  The form stated that M-I might procure a

10  consumer report on plaintiff from PreCheck for employment

11  purposes and included language releasing and discharging M-I and

12  PreCheck from any liability arising out of that report.  (Id.)

13          Plaintiff alleges that PreCheck willfully violated the

14  Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(1), by

15  furnishing consumer reports about plaintiff and class members for

16  employment purposes without first obtaining from M-I and other

17  employers a certification of compliance pursuant to 15 U.S.C.

18  § 1681b(b)(1).  (FAC ¶¶ 42-50.)[1]  Plaintiff alleges that as a

19  result, class members could recover statutory damages between

20  $100 and $1,000 and punitive damages under 15 U.S.C. § 1681n(a).

21  (FAC ¶ 47.)  The court subsequently stayed the action pending the

22  Supreme Court's decision in Spokeo, Inc. v. Robins, 135 S. Ct.

23  1892 (2015), which addresses whether a plaintiff who has not

24  demonstrated a concrete harm has Article III standing to seek

25          [1]     Under § 1681b(b)(1), before PreCheck can furnish a

26  consumer report for employment purposes, the receiving employer
    must certify that it had complied with § 1681b(b)(2)'s disclosure

27  requirements and would comply with § 1681b(b)(3) if it decided to
    take adverse action based on the consumer report.  See 15 U.S.C.

28  § 1681b(b)(1)(A)(i).

                                    2

1   statutory damages under the FCRA.  (Docket No. 69.)  Two months

2   later, the parties reached a settlement.  (Docket No. 70.)

3           The Settlement Agreement provides for the creation of a

4   settlement fund of $1.6 million.  (Dion-Kindem Decl. in Supp. of

5   Prelim. Approval Ex. A ("Settlement Agreement") ¶ 22 (Docket No.

6   72-2).)  From this fund, class counsel may apply for attorney's

7   fees of 25%, or $400,000, and attorney costs of $4,505.81.  (Id.

8   ¶ 26; Dion-Kindem Decl. in Supp. of Att'y Fees ("Dion-Kindem

9   Decl.") ¶ 13 (Docket No. 76-2); Blanchard Decl. in Supp. of

10  Atty's Fees ("Blanchard Decl.") ¶ 6 (Docket No. 76-3).)

11  Additionally, plaintiff may apply for a $5,000 incentive award.

12  (Settlement Agreement ¶ 26.)  Lastly, administration expenses of

13  $133,427 shall be paid out of the settlement fund to the

14  settlement administrator, Dahl Administration, LLC ("Dahl").

15  (Id. ¶¶ 17-18.)

16          The parties' stipulated amount for class counsel's fees

17  and costs and plaintiff's incentive award were negotiated only

18  after the original settlement fund amount of $1.6 million had

19  been agreed upon.  (Id. ¶ 26.)  After the above deductions, the

20  remaining settlement fund to be distributed pro rata to the class

21  is $1,057,067.19.  (See Pl.'s Mem. in Supp. of Prelim. Approval

22  at 6 (Docket No. 72-1).)  65,654 class members have successfully

23  received notice of the class settlement, and the net recovery per

24  class member is approximately $16.  (Kratz Decl. ¶ 10 (Docket No.

25  76-1).)

26          Plaintiff now seeks final approval of the parties'

27  stipulated class-wide settlement pursuant to Federal Rule of

28  Civil Procedure 23(e).  PreCheck does not oppose plaintiff's

1  motion for final approval.  (Docket No. 77.)

2  II. Discussion

3         Rule 23(e) provides that "[t]he claims, issues, or

4  defenses of a certified class may be settled . . . only with the

5  court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e)

6  involves a two-step process in which the Court first determines

7  whether a proposed class action settlement deserves preliminary

8  approval and then, after notice is given to class members,

9  whether final approval is warranted."  Nat'l Rural Telecomms.

10 Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

11 (citing Manual for Complex Litig., Third, § 30.41 (1995)).

12        The Ninth Circuit has declared a strong judicial policy

13 favoring settlement of class actions.  Class Plaintiffs v. City

14 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

15 where, as here, "the parties reach a settlement agreement prior

16 to class certification, courts must peruse the proposed

17 compromise to ratify both the propriety of the certification and

18 the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d

19 938, 952 (9th Cir. 2003).

20     A. Class Certification

21        A class action will be certified only if it meets the

22 four prerequisites identified in Rule 23(a) and additionally fits

23 within one of the three subdivisions of Rule 23(b).  See Fed. R.

24 Civ. P. 23(a)-(b); Ontiveros v. Zamora, Civ. No. 2:08-567 WBS

25 DAD, 2014 WL 3057506, at *4 (E.D. Cal. July 7, 2014).  Although

26 the court has discretion in determining whether the moving party

27 has satisfied each Rule 23 requirement, see Califano v. Yamasaki,

28 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250,

1   255 (9th Cir. 1978), the court must conduct a rigorous inquiry

2   before certifying a class, see Gen. Tel. Co. of Sw. v. Falcon,

3   457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v.

4   Rodriguez, 431 U.S. 395, 403-05 (1977).

5              1. Rule 23(a) Requirements

6        Rule 23(a) restricts class actions to cases where:

7        (1) the class is so numerous that joinder of all
8        members is impracticable; (2) there are questions of
         law or fact common to the class; (3) the claims or
9        defenses of the representative parties are typical of
         the claims or defenses of the class; and (4) the
10       representative parties will fairly and adequately
         protect the interests of the class.

11  Fed. R. Civ. P. 23(a). These requirements are more commonly

12  referred to as numerosity, commonality, typicality, and adequacy

13  of representation.

14                   a. Numerosity

15       "A proposed class of at least forty members

16  presumptively satisfies the numerosity requirement." Avilez v.

17  Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012); see

18  also, e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D.

19  294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely

20  found the numerosity requirement satisfied when the class

21  comprises 40 or more members."). The settlement class here

22  contains more than 65,000 members, which easily satisfies the

23  numerosity requirement. (Kratz Decl. ¶ 10.)

24                   b. Commonality

25       Commonality requires that the class members' claims

26  "depend upon a common contention" that is "capable of classwide

27  resolution--which means that determination of its truth or

28  falsity will resolve an issue that is central to the validity of

                                   5

1    each one of the claims in one stroke." Wal-Mart Stores, Inc. v.

2    Dukes, 131 S. Ct. 2541, 2550 (2011).  "[A]ll questions of fact

3    and law need not be common to satisfy the rule," and the

4    "existence of shared legal issues with divergent factual

5    predicates is sufficient, as is a common core of salient facts

6    coupled with disparate legal remedies within the class." Hanlon

7    v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

8          The proposed class includes all "individual[s] on whom,

9    during the period from May 20, 2009 through September 18, 2015, a

10    consumer report for employment purposes was furnished by

11    PreCheck, Inc., and where the address provided . . . listed

12    California as the state of [] residence at the time the report

13    was furnished."  (Kratz Decl. Ex. A.)  The class would be

14    comprised of individuals alleging facts similar to the named

15    plaintiff: that PreCheck furnished consumer reports regarding the

16    class members to prospective employers without first obtaining

17    the requisite § 1681b(b)(1) certification from those employers.

18    The statutory damages could also be resolved on a class-wide

19    basis.  See 15 U.S.C. § 1681n(a).  The proposed class thus meets

20    the commonality requirement.

21                  c. Typicality

22          Typicality requires that the named plaintiff have

23    claims "reasonably coextensive with those of absent class

24    members," but those claims do not have to be "substantially

25    identical." Hanlon, 150 F.3d at 1020.  The test for typicality

26    "is whether other members have the same or similar injury,

27    whether the action is based on conduct which is not unique to the

28    named plaintiff[], and whether other class members have been

1   injured by the same course of conduct." Hanon v. Dataproducts

2   Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

3        Plaintiff's and the class members' claims are based on

4   substantially similar factual allegations regarding PreCheck's

5   course of conduct: PreCheck's furnishing of a consumer report for

6   employment purposes without having first obtained a § 1681b(b)(1)

7   certification.  Their claims are based on the legal theory that

8   PreCheck failed to comply with its obligations under

9   § 1681b(b)(1) of the FCRA.  Plaintiff and class members thus

10  allege similar injuries and class members would presumably seek

11  the same remedy that plaintiff does here: statutory and punitive

12  damages under § 1681n(a).  Accordingly, plaintiff's claims appear

13  to be reasonably coextensive with those of the proposed class,

14  and the proposed class thus meets the typicality requirement.

15                d. Adequacy of Representation

16        To resolve the question of adequacy, the court must

17  make two inquiries: "(1) do the named plaintiffs and their

18  counsel have any conflicts of interest with other class members

19  and (2) will the named plaintiffs and their counsel prosecute the

20  action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

21  1020.  These questions involve the consideration of a number of

22  factors, including "a sharing of interests between

23  representatives and absentees."  Brown v. Ticor Title Ins., 982

24  F.2d 386, 390 (9th Cir. 1992).

25        The Settlement Agreement provides for an incentive

26  payment of $5,000 to plaintiff to be paid out of the settlement

27  fund.  Although the Ninth Circuit has approved "reasonable

28  incentive payments" to named plaintiffs, such payments

                              7

1   nonetheless raise the possibility that a plaintiff's interest in

2   receiving his payment will cause his interests to diverge from

3   the class's interest in a fair settlement.  Staton, 327 F.3d at

4   977-78 (declining to approve a settlement agreement where the

5   size of the incentive payment suggested that the named plaintiffs

6   were "more concerned with maximizing [their own] incentives than

7   with judging the adequacy of the settlement as it applies to

8   class members at large").  The court must thus "scrutinize

9   carefully [such] awards so that they do not undermine the

10  adequacy of the class representatives."  Radcliffe v. Experian

11  Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

12          A $5,000 incentive award to plaintiff does not on its

13  face appear to create a conflict of interest.  Courts have

14  generally found that a $5,000 incentive payment is reasonable.

15  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

16  Cir. 2000); Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal.

17  2008).  The proposed award, however, is disproportionate to the

18  recovery of other class members, who will each receive

19  approximately $16.  Relevant factors for evaluating a named

20  plaintiff's incentive award include "the actions the plaintiff

21  has taken to protect the interests of the class, the degree to

22  which the class has benefitted from those actions, . . . and

23  reasonabl[e] fear[s of] workplace retaliation."  Staton, 327 F.3d

24  at 977 (citation omitted).

25          The incentive payment here is not particularly unfair

26  to other class members, given that it will not significantly

27  reduce the amount of settlement funds available to the rest of

28  the class.  In addition, none of the class members have objected

1  to the amount of additional compensation sought by the named

2  plaintiff.  Plaintiff also explains that he dedicated over

3  seventy-five hours assisting class counsel, including traveling

4  to the mediation, participating in extensive telephone

5  conversations with counsel, responding to emails, looking for and

6  reviewing documents, and explaining the contents of documents to

7  counsel.  (Syed Decl. ¶ 3 (Docket No. 76-4.)

8          Plaintiff also says he bore the risk that his future

9  employers might learn about this lawsuit and be hesitant to hire

10 him, but nonetheless pursued this action for the benefit of the

11 proposed class members.  (Id. ¶ 2.)  He further states that he

12 risked being personally liable for PreCheck's costs if this

13 action was unsuccessful, and that those costs could have been

14 substantial.  (Id. ¶ 4.)  Given this information, the court finds

15 that the $5,000 incentive payment to the named plaintiff is

16 reasonable and does not create a conflict of interest.

17         The second prong of the adequacy inquiry examines the

18 vigor with which the named plaintiff and his counsel have pursued

19 the common claims.  "Although there are no fixed standards by

20 which 'vigor' can be assayed, considerations include competency

21 of counsel and, in the context of a settlement-only class, an

22 assessment of the rationale for not pursuing further litigation."

23 Hanlon, 150 F.3d at 1021.

24         Plaintiff's counsel state that they have expertise in

25 prosecuting employment claims throughout their careers.  (Dion-

26 Kindem Decl. ¶ 2; Blanchard Decl. ¶ 2.)  Peter R. Dion-Kindem

27 states that he has been counsel of record for at least forty

28 class actions in federal and state court.  (Dion-Kindem Decl.

1    ¶ 3.)  Lonnie C. Blanchard, III states that he has been counsel

2    of record for at least thirty employment class actions.

3    (Blanchard Decl. ¶ 2.)  The court thus has some assurance that

4    plaintiff's counsel has the experience necessary to maximize the

5    return on this matter and vindicate the injuries of the class.

6          Plaintiff's counsel also indicate that the decision to

7    settle plaintiff's claim was made after taking into account the

8    uncertainty and risk of further litigation, the potential outcome

9    of pursuing the case, and the difficulties and delays inherent in

10   class action litigation.  (Dion-Kindem Decl. in Supp. of Prelim.

11   Approval ¶ 7.)  Plaintiff's counsel point to the pending decision

12   in Spokeo, which will determine whether a plaintiff seeking only

13   statutory damages for a violation of the FCRA has Article III

14   standing.  (Id.)  The court agrees that these considerations

15   weigh in favor of settlement.  Accordingly, the court holds that

16   the named plaintiff is an adequate class representative.

17             2. Rule 23(b)

18          An action that meets all the prerequisites of Rule

19   23(a) may be certified as a class action only if it also

20   satisfies the requirements of one of the three subdivisions of

21   Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

22   Cir. 2013).  Plaintiffs seek certification under Rule 23(b)(3),

23   which provides that a class action may be maintained only if (1)

24   "the court finds that questions of law or fact common to class

25   members predominate over questions affecting only individual

26   members" and (2) "that a class action is superior to other

27   available methods for fairly and efficiently adjudicating the

28   controversy."  Fed. R. Civ. P. 23(b)(3).

1          a. Predominance

2          "Because Rule 23(a)(3) already considers commonality,

3     the focus of the Rule 23(b)(3) predominance inquiry is on the

4     balance between individual and common issues."  Murillo v. Pac.

5     Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing

6     Hanlon, 150 F.3d at 1022); see also Amchem Prods. Inc. v.

7     Windsor, 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3)

8     predominance inquiry tests whether proposed classes are

9     sufficiently cohesive to warrant adjudication by

10    representation.").

11         Plaintiff's and the class members' claims turn on the

12    legality of a common method used by PreCheck to furnish consumer

13    reports for employment purposes and whether that method

14    constituted a willful violation of the FCRA.  The class claim

15    thus demonstrates a "common nucleus of facts and potential legal

16    remedies" for the class members that can be resolved in a single

17    adjudication.  See Hanlon, 150 F.3d at 1022.

18         To the extent that any variations may exist, there is

19    no indication that any variations in class members' claims are

20    "sufficiently substantive to predominate over the shared claims."

21    See id. at 1023.  Accordingly, the court finds that common

22    questions of law and fact predominate over questions affecting

23    only individual class members.

24          b. Superiority

25         Rule 23(b)(3) also requires a showing that "a class

26    action is superior to other available methods for fairly and

27    efficiently adjudicating the controversy."  Fed. R. Civ. P.

28    23(b)(3).  In considering whether a class action is superior, the

11

court considers four non-exhaustive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id.  The parties settled this action prior to certification, making factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at 477 (citing Windsor, 521 U.S. at 620).

Given that they will recover approximately $16 under the settlement, class members might have an interest in individually prosecuting their own separate actions.  If class members pursued individual litigation, they could possibly recover statutory damages between $100 and $1,000 and punitive damages under the FCRA.  See 15 U.S.C. § 1681n(a).  As discussed in greater detail below, however, the substantial risks associated with litigating this case make class members' interests in pursuing individual actions likely low.

Additionally, notice of the settlement had been successfully mailed to 65,654 class members, out of which only five members opted out and none had filed objections.  (Kratz Decl. ¶¶ 10, 12-13.)  The court is also unaware of any concurrent litigation already begun by class members regarding the FCRA issues presented here against PreCheck.  The class action device thus appears to be the superior method for adjudicating this controversy.

Accordingly, because the settlement class has satisfied

12

1  both Rule 23(a) and Rule 23(b)(3), the court will grant final

2  certification of the settlement class.

3              3. Rule 23(c)(2) Notice Requirements

4        If the court certifies a class under Rule 23(b)(3), it

5  "must direct to class members the best notice that is practicable

6  under the circumstances, including individual notice to all

7  members who can be identified through reasonable effort."  Fed.

8  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

9  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

10  651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

11  417 U.S. 156, 172–77 (1974)).  Although that notice must be

12  "reasonably certain to inform the absent members of the plaintiff

13  class," actual notice is not required.  Silber v. Mabon, 18 F.3d

14  1449, 1454 (9th Cir. 1994) (citation omitted).

15        PreCheck provided records for 72,261 individuals about

16  whom it furnished consumer reports for employment purposes.

17  (Kratz Decl. ¶ 4.)  Dahl then removed duplicate and incomplete

18  records, processed the records through the U.S. Postal Service

19  National Change of Address database to update the addresses for

20  class members who had moved within the last four years, and

21  successfully mailed summary notice of the class settlement to

22  65,654 class members.  (Id. ¶¶ 4-13.)

23        The mailed notice contained a summary of the settlement

24  terms, explained that class members do not have to do anything to

25  receive their settlement payments, described the binding effect

26  of the class action and the procedure for opting out and

27  objecting to the settlement, and provided the time and place of

28  the final fairness hearing.  (Id. Ex. A.)  The notice also

1    directed class members to the settlement website, which provided

2    further information on the proceedings, class members' rights,

3    and answers to frequently asked questions; allowed class members

4    to view and download the Settlement Agreement and other

5    settlement documents filed with the court; and listed the contact

6    information for the claims administrator.  (Id. ¶ 11, Exs. A-B.)

7           The court finds that the notice provided was reasonably

8    certain to inform class members of the settlement and that it was

9    the best notice practicable under the circumstances.  The notice

10   provided to class members therefore satisfies Rule 23(c)(2)(B).

11   See also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575

12   (9th Cir. 2004) ("Notice is satisfactory if it 'generally

13   describes the terms of the settlement in sufficient detail to

14   alert those with adverse viewpoints to investigate and to come

15   forward and be heard.'" (citation omitted)).

16      B.  Rule 23(e): Fairness, Adequacy, and Reasonableness of

17          Proposed Settlement

18          Having determined class treatment to be warranted, the

19   court must now determine whether the terms of the parties'

20   settlement appear fair, adequate, and reasonable.  See Fed. R.

21   Civ. P. 23(e)(2); Hanlon, 150 F.3d at 1026.  This process

22   requires the court to "balance a number of factors," including:

23          the  strength  of  the  plaintiff's  case;  the  risk,
            expense,  complexity,  and  likely  duration  of  further
24          litigation; the risk of maintaining class action status
            throughout the trial; the amount offered in settlement;
25          the extent of discovery completed and the stage of the
            proceedings;  the  experience  and  views  of  counsel;  the
26          presence  of  a  governmental  participant;  and  the
            reaction  of  the  class  members  to  the  proposed
27          settlement.

28   Hanlon, 150 F.3d at 1026.

                                   14

1          1. <u>Strength of Plaintiff's Case</u>

2          An important consideration is the strength of the

3 plaintiff's case on the merits balanced against the amount

4 offered in the settlement.  <u>DIRECTV</u>, 221 F.R.D. at 526.  The

5 district court, however, is not required to reach any ultimate

6 conclusions on the merits of the dispute, "for it is the very

7 uncertainty of outcome in litigation and avoidance of

8 wastefulness and expensive litigation that induce consensual

9 settlements."  <u>Officers for Justice v. Civil Serv. Comm'n of the</u>

10 <u>City & Cty. of S.F.</u>, 688 F.2d 615, 625 (9th Cir. 2004).

11          Plaintiff alleges that PreCheck willfully violated

12 § 1681b(b)(1) of the FCRA by improperly furnishing consumer

13 reports about class members for employment purposes without first

14 obtaining the required certification that the employers had

15 complied with their obligations under the FCRA.  Plaintiff here

16 faced substantial risks associated with litigating this case.

17 PreCheck has vigorously denied that it violated § 1681b(b)(1)

18 because it had obtained prospective, blanket certifications from

19 M-I and other employers before furnishing consumer reports to

20 them.  PreCheck further contends that even if those blanket

21 certifications were not proper, it nonetheless did not willfully

22 violate the FCRA.  PreCheck's denial of liability is evidenced by

23 the two motions to dismiss it had previously filed in this

24 litigation.  (Docket Nos. 10, 38.)

25          There was a risk that PreCheck's prospective

26 certifications indeed complied with the FCRA or that even if they

27 did not comply, that PreCheck's actions did not amount to willful

28 noncompliance.  Furthermore, this action was stayed pending the

1  Supreme Court's resolution of <u>Spokeo</u> two months before the

2  parties settled.  Absent a settlement, the Supreme Court's

3  decision in <u>Spokeo</u> could have undermined plaintiff's action

4  entirely if the Supreme Court ruled that a plaintiff does not

5  have standing under the FCRA without first proving a concrete

6  injury.

7       The settlement terms, which provide some payment to

8  over 65,000 members of the class, compare favorably to these

9  uncertainties regarding PreCheck's liability.  "In most

10  situations, unless the settlement is clearly inadequate, its

11  acceptance and approval are preferable to lengthy and expensive

12  litigation with uncertain results."  <u>DIRECTV</u>, 221 F.R.D. at 529

13  (citation omitted).  In comparing the strength of plaintiff's

14  case with the settlement, the court thus finds that the proposed

15  settlement is a fair resolution of the issues in this case.

16            2. <u>Risk, Expense, Complexity, and Likely Duration of</u>

17               <u>Further Litigation</u>

18       Further litigation could greatly delay the resolution

19  of this case and increase expenses.  The parties would have had

20  to wait until the Supreme Court's decision in <u>Spokeo</u> and, if that

21  decision allowed plaintiff's action to proceed, they would have

22  had to litigate class certification and a jury trial.  This

23  factor weighs in favor of settling this action.

24            3. <u>Risk of Maintaining Class Action Status Throughout</u>

25               <u>Trial</u>

26       Plaintiff states that if the case proceeded to trial,

27  there would be a risk that PreCheck would succeed in decertifying

28  the class.  (Pls.' Mot. at 3-4.)  Thus, this factor also favors

1  approval of the settlement

2          4. <u>Amount Offered in Settlement</u>

3          In assessing the amount offered in settlement, "[i]t is

4  the complete package taken as a whole, rather than the individual

5  component parts, that must be examined for overall fairness."

6  <u>Officers for Justice</u>, 688 F.2d at 628.  "It is well-settled law

7  that a cash settlement amounting to only a fraction of the

8  potential recovery will not per se render the settlement

9  inadequate or unfair."  <u>Id.</u>  The value of the settlement fund in

10  this case is $1.6 million with each class member receiving

11  approximately $16.  As discussed above, the class recovery here

12  is a fair resolution of the issues given the litigation risks

13  involved regarding the merits and the costs and delays of further

14  litigation.  This factor thus weighs in favor of settlement.

15          5. <u>Extent of Discovery and the State of Proceedings</u>

16          The parties represent that they have conducted an

17  extensive exchange of information in this matter.  (Dion-Kindem

18  Decl. in Supp. of Prelim. Approval ¶ 5.)  Among other

19  information, PreCheck has provided plaintiff with information

20  regarding its agreements with the employers, its certification

21  process, and information on the class members on whom it

22  furnished consumer reports.  (Pl.'s Mot. at 4; Kratz Decl. ¶ 4,

23  Ex. B at 2.)

24          The parties also engaged in a full day of mediation

25  before Joan Jessler, a well-known mediator, and the matter was

26  settled based on the mediator's proposal.  (Pl.'s Mem. in Supp.

27  of Prelim. Approval at 19.)  The parties' investigation of the

28  claims through informal discovery and mediation, and their

1    consideration and acceptance of the views of a third-party

2    mediator weigh in favor of settlement.

3                6. Experience and Views of Counsel

4                As discussed above, plaintiff's counsel indicate that

5    they have extensive expertise in prosecuting employment claims

6    and class actions throughout their careers.  (Dion-Kindem Decl.

7    ¶¶ 2-3; Blanchard Decl. ¶ 2.)  Based on their experience, counsel

8    believe that the settlement is fair, reasonable, and in the best

9    interests of the class members given the uncertainty and risk of

10   further litigation, the potential outcome of pursuing the case,

11   the difficulties and delays inherent in class action litigation,

12   and the Supreme Court's pending decision in Spokeo.  (Dion-Kindem

13   Decl. in Supp. of Prelim. Approval ¶ 7.)  The court gives

14   considerable weight to class counsel's opinions regarding the

15   settlement due to counsel's experience and familiarity with the

16   litigation.  Alberto v. GMRI, Inc., Civ. No. 07-1895 WBS DAD,

17   2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008).  Counsel's

18   assertion that the settlement is fair, adequate, and reasonable

19   is a factor supporting the court's final approval of the

20   agreement.  See Hanlon, 150 F.3d at 1026.

21                7. Presence of Government Participant

22                No governmental entity participated in this matter;

23   this factor, therefore, is irrelevant to the court's analysis.

24                8. Reaction of the Class Members to the Proposed

25                   Settlement

26                Notice of the settlement was successfully mailed to

27   65,654 class members and no objections were filed prior to the

28   December 28, 2015 deadline.  (Kratz Decl. ¶¶ 10, 12.)  "It is

                                    18

1   established that the absence of a large number of objections to a

2   proposed class action settlement raises a strong presumption that

3   the terms of a proposed class settlement action are favorable to

4   the class members." DIRECTV, 221 F.R.D. at 529.  Accordingly,

5   this factor weighs in favor of the court's approval of the

6   settlement.

7         Having considered the above factors, the court finds

8   that the settlement is fair, adequate, and reasonable pursuant to

9   Rule 23(e).  See Hanlon, 150 F.3d at 1026.

10        C. Attorney's Fees

11        Federal Rule of Civil Procedure 23(h) provides that

12   "[i]n a certified class action, the court may award reasonable

13   attorney's fees and nontaxable costs that are authorized by law

14   or by the parties' agreement."  If a negotiated class action

15   settlement includes an award of attorney's fees, that fee award

16   must be evaluated in the overall context of the settlement.

17   Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002);

18   Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D.

19   Cal. 2013) (England, J.).  The court "ha[s] an independent

20   obligation to ensure that the award, like the settlement itself,

21   is reasonable, even if the parties have already agreed to an

22   amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d

23   935, 941 (9th Cir. 2011).

24        "Under the 'common fund' doctrine, 'a litigant or a

25   lawyer who recovers a common fund for the benefit of persons

26   other than himself or his client is entitled to a reasonable

27   attorney's fee from the fund as a whole.'"  Staton, 327 F.3d at

28   969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

19

1    In common fund cases, the district court has discretion to

2    determine the amount of attorney's fees to be drawn from the fund

3    by employing either the percentage method or the lodestar method.

4    Id.  The percentage method is particularly appropriate in common

5    fund cases where, as here, "the benefit to the class is easily

6    quantified." Bluetooth, 654 F.3d at 942.  The Ninth Circuit has

7    permitted courts to award attorney's fees using the percentage

8    method "in lieu of the often more time-consuming task of

9    calculating the lodestar." Id.  The court will thus adopt the

10   percentage method here.

11          Under the percentage method, the court may award class

12   counsel a percentage of the total settlement fund. Vizcaino v.

13   Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

14   Circuit "has established 25% of the common fund as a benchmark

15   award for attorney fees." Hanlon, 150 F.3d at 1029.  Class

16   counsel request $400,000 in attorney's fees, which constitutes

17   25% of the total $1.6 million settlement fund.  (Dion-Kindem

18   Decl. ¶ 11; Blanchard Decl. ¶ 3.)  The parties negotiated the

19   amount for attorney's fees only after the original settlement

20   amount of $1.6 million had been agreed upon.  (Settlement

21   Agreement ¶ 26.)

22          As discussed above, there were substantial risks and

23   delays inherent in this litigation and a possibility that class

24   members would not have recovered anything.  No class members have

25   filed any objections to the settlement, nor to the proposed

26   attorneys fees, and PreCheck does not oppose class counsel's

27   application for fees.  (Id.; Kratz Decl. ¶ 13.)  The court thus

28   finds that class counsel's request for attorney's fees is fair,

1  appropriate, and reasonable under the circumstances.

2  Accordingly, the court will approve class counsel's application

3  for $400,000 in attorney's fees.

4      D. <u>Costs</u>

5          "There is no doubt that an attorney who has created a

6  common fund for the benefit of the class is entitled to

7  reimbursement of reasonable litigation expenses from that fund."

8  <u>Alberto</u>, 2008 WL 4891201, at *12.  Class counsel have submitted a

9  list of itemized costs relating to scanning, photocopying,

10 mediation, travel expenses, postage, court fees, and other

11 office-related costs.  (Dion-Kindem Decl. ¶ 13; Blanchard Decl.

12 ¶ 6.)  The court finds these are reasonable litigation expenses.

13 Accordingly, the court will grant class counsel's request for

14 costs in the amount of $2,877.59 to Dion-Kindem and $1,628.22 to

15 Blanchard.

16     E. <u>Incentive Payment to Named Plaintiff</u>

17         "Incentive awards are payments to class representatives

18 for their service to the class in bringing the lawsuit."

19 <u>Radcliffe</u>, 715 F.3d at 1163.  For the reasons previously

20 discussed, <u>see</u> <u>supra</u> Part II.A.1.d, the court finds that an

21 incentive payment of $5,000 is reasonable and proper in this

22 case.

23 III. <u>Conclusion</u>

24         Based on the foregoing, the court grants final

25 certification of the settlement class and approves the settlement

26 set forth in the Settlement Agreement (Docket No. 72-2) as fair,

27 reasonable, and adequate.  Consummation of the Settlement

28 Agreement is therefore approved, and the definitions provided in

1   the Settlement Agreement shall apply to the terms used herein.

2   The Settlement Agreement shall be binding upon all members of the

3   class action who did not timely elect to be excluded.

4        IT IS THEREFORE ORDERED that plaintiff's motion for

5   final approval of the class action settlement (Docket No. 76) be,

6   and the same hereby is, GRANTED.

7        IT IS FURTHER ORDERED THAT:

8   (1)  solely for the purpose of this settlement, and pursuant

9        to Federal Rule of Civil Procedure 23, the court hereby

10       certifies the following class: All individuals on whom,

11       during the period from May 20, 2009 through the date of

12       this Order, a consumer report for employment purposes was

13       furnished by PreCheck, Inc., and where the address

14       provided listed California as the individual's state of

15       residence at the time the report was furnished, but not

16       any individuals who timely opt-out of the settlement.

17       Specifically, the court finds that:

18  (a)  the settlement class members are so numerous that

19       joinder of all settlement class members would be

20       impracticable;

21  (b)  there are questions of law and fact common to the

22       settlement class which predominate over any

23       individual questions;

24  (c)  claims of the named plaintiff are typical of the

25       claims of the settlement class;

26  (d)  the named plaintiff and plaintiff's counsel have

27       fairly and adequately represented and protected the

28       interests of the settlement class; and

22

1          (e)  a class action is superior to other available

2               methods for the fair and efficient adjudication of

3               the controversy.

4     (2)  the court appoints the named plaintiff, Sarmad Syed, as

5          representative of the class and finds that he meets the

6          requirements of Rule 23;

7     (3)  the court appoints Peter R. Dion-Kindem, P.C., 21550

8          Oxnard St., Suite 900, Woodland Hills, CA 91367; and

9          Blanchard Law Group, APC, 3311 East Pico Boulevard

10         Los Angeles, CA 90023, as counsel to the settlement class

11         and finds that counsel meets the requirements of Rule 23;

12    (4)  the Settlement Agreement's plan for class notice is the

13         best notice practicable under the circumstances and

14         satisfies the requirements of due process and Rule 23.

15         The plan is approved and adopted.  The notice to the

16         class complies with Rule 23(c)(2) and Rule 23(e) and is

17         approved and adopted;

18    (5)  the parties have executed the notice plan in the court's

19         Preliminary Approval Order and successfully mailed notice

20         to 65,654 class members, in response to which five class

21         members requested to be excluded, and none objected.

22         Having found that the parties and their counsel took

23         extensive efforts to locate and inform all putative class

24         members of the settlement, and given that no class

25         members have filed any objections to the settlement, the

26         court finds and orders that no additional notice to the

27         class is necessary;

28    (6)  as of the date of the entry of this Order, plaintiff and

1        all class members who have not timely opted out of the

2        settlement, and all those acting or purporting to act on

3        their behalf, fully and forever release, waive, acquit,

4        and discharge PreCheck, Inc., and the Released Persons

5        (as defined by paragraph 10 of the Settlement Agreement)

6        from any and all claims set forth in the complaint or any

7        amended complaint, and any and all claims, known or

8        unknown, that arise out of or that could have arisen out

9        of, the facts, transactions, occurrences,

10       representations, or omissions set forth in the First

11       Amended Complaint, based on claims arising out of or

12       based on the Fair Credit Reporting Act; and all

13       penalties, tax, and interest associated with the

14       foregoing.  The claims released by plaintiffs and class

15       members are subject to the conditions stated in paragraph

16       33 of the Settlement Agreement;

17   (7) class administrator, Dahl Administration, LLC, is awarded

18       $133,427.00 for its services as settlement administrator

19       and payment shall be made in accordance with paragraph 28

20       of the Settlement Agreement;

21   (8) class representative, Sarmad Syed, is awarded $5,000 as

22       an incentive payment and payment shall be made in

23       accordance with paragraphs 26, 30, and 31 of the

24       Settlement Agreement;

25   (9) class counsel, Peter R. Dion-Kindem, P.C. and Blanchard

26       Law Group, APC, are awarded $400,000 in attorney's fees

27       and payment shall be made in accordance with paragraph 29

28       of the Settlement Agreement;

1    (10) class counsel, Peter R. Dion-Kindem, P.C., is awarded

2         $2,877.59 in costs and payment shall be made in

3         accordance with paragraph 29 of the Settlement Agreement;

4    (11) class counsel, Blanchard Law Group, APC, is awarded

5         $1,628.22 in costs and payment shall be made in

6         accordance with paragraph 29 of the Settlement Agreement;

7    (12) all class members who did not opt out from the settlement

8         will receive a settlement share from the Net Settlement

9         Fund (as defined in paragraph 12 of the Settlement

10        Agreement) and payment shall be made in accordance with

11        paragraphs 26, 30, and 31 of the Settlement Agreement;

12   (13) this action is dismissed with prejudice; however, without

13        affecting the finality of this Order, the court shall

14        retain continuing jurisdiction over the interpretation,

15        implementation, and enforcement of the Settlement

16        Agreement with respect to all parties to this action and

17        their counsel of record.

18        Pursuant to Federal Rule of Civil Procedure 58, the

19   Clerk of the Court is instructed to enter judgment accordingly.

20   Dated:   January 26, 2016

21                                    WILLIAM B. SHUBB
                                      UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28