UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SARMAD SYED, an individual on behalf of themselves and all others similarly situated,

              Plaintiffs

     v.

M-I LLC, a Delaware Limited Liability Company, et al.,

              Defendants.

No. 1:14-cv-00742 WBS BAM

MEMORANDUM AND ORDER RE: PRELIMINARY APPROVAL OF CLASS SETTLEMENT

----oo0oo----

          Plaintiff Sarmad Syed brought this putative class action lawsuit against M-I, LLC ("M-I") and other parties alleging M-I violated federal credit reporting laws while conducting pre-employment background checks.

          The parties have reached a settlement which would resolve plaintiff's claims against defendant M-I.  (See Dion-Kindem Decl. Ex. 1, Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") (Docket No. 127-2).)

Presently before the court is plaintiff's unopposed motion for preliminary approval of the proposed class, proposed class settlement, proposed class counsels' fee and settlement allocation, and proposed plan of notice. (Docket No. 127.)

I.   Factual and Procedural Background

Plaintiff applied for a job with M-I on July 20, 2011. (FAC ¶ 14.) During the application process, plaintiff filled out and signed a one-page form entitled "Pre-Employment Disclosure and Release." (Id.) That form included the following language:

> I understand that the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release, and indemnify prospective employer [defendant M-I LLC], PreCheck, Inc., their agents, servants, and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.
>
> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc.

(Id.)

Plaintiff alleges that M-I violated Section 1681(b)(2) of the Fair Credit Reporting Act by procuring or causing to be procured a consumer report for employment purposes via a disclosure form that contained not only language authorizing the procurement of a consumer report, but also an indemnity clause and release. (Id. ¶ 17.) Plaintiff alleges that as a result, class members could recover statutory damages between $100 and $1,000 as well as punitive damages under 15 U.S.C. § 1681n(a).

(Id. ¶ 31.)[1]

In September 2014, Defendant M-I moved this court for dismissal of plaintiff's First Amended Complaint (Docket No. 39) and the court granted that motion (Docket No. 46). Plaintiff appealed the dismissal to the Ninth Circuit, which reversed this court's ruling and remanded the case. See Syed v. M-I, LLC, 853 F.3d 492, 495 (9th Cir.), cert. denied, 138 S. Ct. 447 (2017).

In October 2018, the parties reached a settlement. (See Docket No. 122.) Their Settlement Agreement provides for a gross settlement amount of $556,000. (Settlement Agreement ¶ 34.) The Settlement Agreement specifies that the defendants agree not to oppose a motion by class counsel for attorney's fees (up to $300,000) and attorney's costs (up to $10,000) from this gross settlement amount. (Id. ¶¶ 37-38.) It also estimates the settlement administration costs of approximately $25,000 (Id. ¶ 36) and a class representative service award of up to $5,000 (Id. ¶ 35), both of which will be deducted from the gross settlement amount.

The Settlement Agreement provides that the amount remaining after these deductions ("Net Settlement Amount") will be equally distributed among those class members who have not opted out of the settlement, with each one receiving a pro rata share of the Net Settlement Amount. (Id. 39.)

Plaintiff now seeks preliminary approval of the parties' stipulated class-wide settlement pursuant to Federal

---

[1] The complaint also included related allegations against PreCheck Inc., the company that provided the credit reports in question. Plaintiff and defendant PreCheck reached a settlement which this court approved in early 2016. (Docket No. 79.)

Rule of Civil Procedure 23(e).  M-I has not opposed this motion.

II.  Discussion

Judicial policy strongly favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

There are two stages to a court's approval of a proposed class action settlement.  In the first phase, the court temporarily certifies a class, authorizes notice to that class, and preliminarily approves the settlement, with final approval contingent on the outcome of a fairness hearing.  Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014.)  If a court determines that a proposed class action settlement does deserve preliminary approval, then notice of the action is given to the class members and a fairness hearing is held.

At the fairness hearing, the court will entertain class members' objections to both the suitability of the class action as a vehicle for this litigation and the terms of the settlement. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  After the fairness hearing, the court will make a final determination regarding whether the parties should be allowed to settle the class action pursuant to the agreed upon terms.  See Mora v. Cal W. Ag Servs., Inc., No. 1:15-CV-1490 LJO EPG, 2018 WL 3201764, at *3 (E.D. Cal. June 28,

4

2018), report and recommendation adopted, No. 1:15-CV-1490 LJO EPG, 2018 WL 4027017 (E.D. Cal. Aug. 22, 2018)("Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate.").

Here, the court performs only the preliminary step of class settlement approval. Before turning to the propriety of the proposed settlement, however, the court must first determine whether certification of the settlement class is proper. See Staton, 327 F.3d at 952 (stating that in cases where "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

A.  Class Certification

To be certified, the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") and Federal Rule of Civil Procedure 23(b)("Rule 23(b)"). See Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).  In the settlement context, the court's careful scrutiny of the extent to which the putative class complies with the requirements of Rules 23(a) and 23(b) is especially important since the court will "lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).

1.  Rule 23(a) Requirements

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The court will address each of these four requirements in turn.

### a. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Though there is no definite threshold for determining numerosity, the requirement is presumptively satisfied by a proposed class of at least forty members. See Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."). Here, plaintiff seeks to represent a class of approximately 4,500 members. (Settlement Agreement ¶ 2.) The numerosity requirement is easily satisfied by the proposed settlement class.

### b. Commonality

Commonality hinges on whether the class members' claims "depend upon a common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Moreover, "[a]ll questions of fact and law need not be common to satisfy the rule." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Rather, the

"existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Id.

Here, the settlement class is comprised of:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom M-I L.L.C. may have procured or caused to be procured a consumer report for employment purposes during the period from May 19, 2009 through November 1, 2018, who M-I L.L.C. hired, and who have not signed a severance agreement and release or equivalent agreement releasing the claims asserted in the Action.

(Settlement Agreement ¶ 2.)

The members of the putative class allege that defendant procured or caused to be procured consumer reports about them, for employment purposes, without making the disclosure required by the Fair Credit Reporting Act.  Specifically, the proposed class members all allege that the defendant used a disclosure form that also contained indemnifying language when obtaining their consent to obtain credit reports about them for employment purposes.

These contentions arise out of a common core of salient facts and constitute a shared set of allegations regarding the legality of defendant's conduct vis-à-vis the Fair Credit Reporting Act.  The statutory damages could also be resolved on a class-wide basis.  See 15 U.S.C. § 1681n(a).  The proposed class thus meets the commonality requirement.

c.  Typicality

Rule 23(a) also requires that the "claims or defenses of the representative parties [be] typical of the claims or

defenses of the class." Fed. R. Civ. P. 23(a)(3). The Ninth
Circuit has held that to meet the typicality requirement, the
named plaintiff's claims must be "reasonably coextensive with
those of absent class members." Hanlon, 150 F.3d at 1020. In
evaluating the named plaintiff's typicality, courts must look to
"whether other members have the same or similar injury, whether
the action is based on conduct which is not unique to the named
plaintiffs, and whether other class members have been injured by
the same course of conduct." Hanon v. Dataprods. Corp., 976 F.2d
497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D.
279, 282 (C.D. Cal. 1985)).

        The putative class members allege a set of facts that
is essentially identical to those alleged by the named plaintiff.
Specifically, they allege that the defendant violated Section
1681b(b)(2) of the Fair Credit Reporting Act by:

        procuring or causing to be procured consumer
        reports for employment purposes regarding
        Plaintiff and other class members without making
        the required disclosure "in a document that
        consists solely of the disclosure" by using the
        disclosure and authorization form to obtain
        indemnity and a release of claims[.]

(FAC ¶ 17.)

        Plaintiff and class members thus allege similar
injuries and class members would presumably seek the same remedy
that plaintiff does here: statutory and punitive damages under §
1681n(a). (See FAC ¶ 31.) Accordingly, plaintiff's claims
appear to be reasonably coextensive with those of the proposed
class, and the proposed class thus meets the typicality
requirement.

8

d.   Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

In most respects, for reasons discussed above in the "commonality" and "typicality" sections, the named plaintiffs' interests appear to be co-extensive with those of the class. However, the settlement provides for an incentive award of up to $5,000 for the named plaintiff.  (See Settlement Agreement ¶ 35.)

Although the Ninth Circuit has specifically approved the award of "reasonable incentive payments" to named plaintiffs, the use of an incentive award nonetheless raises the possibility that a plaintiff's interest in receiving that award will cause his interests to diverge from the class's interest in a fair settlement.  See Staton, 327 F.3d at 977-78 (declining to approve a settlement agreement where size of incentive award suggested that named plaintiffs were "more concerned with maximizing [their own] incentives than with judging the adequacy of the settlement as it applies to class members at large.").  As a result, district courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

The proposed $5,000 incentive award to plaintiff is very disproportionate to the anticipated $50 recovery of other class members. See e.g., <u>Ybarrondo v. NCO Fin. Sys., Inc.</u>, 2008 WL 183714, at *3 (S.D. Cal. 2008) (denying preliminary approval of class action settlement and requiring the parties to "address the issue of the named Plaintiff's proposed $2,000 cash award," which the court felt was "disproportionately large in comparison to the class members' $23 cash award."). Such a substantial fee award must be justified by, for example, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . and [plaintiff's] reasonabl[e] fear[s of] workplace retaliation." <u>Staton</u>, 327 F.3d at 977 (citation and quotation omitted). In the instant case, the only evidence of plaintiff's contributions to the class submitted alongside the instant motion is Peter Dion-Kindem's declaration that absent plaintiff's action "none of the [c]lass [m]embers would have reaped the rewards of this action. (Dion-Kindem Decl. ¶ 22.) The plaintiff has also previously declared that in bringing this action he bore the risk that his future employers might learn about this lawsuit and be hesitant to hire him. (Syed Decl. ¶ 2 (Docket No. 76-4.) Though relevant, these facts, taken together, do not provide strong support for a $5,000 incentive award in a settlement where the average class member will recover only $50.

At this stage, however, the court cannot determine that the proposed $5,000 incentive awards render the named plaintiff an inadequate representative of the class. It emphasizes, however, that this is only a preliminary determination. On or

before the date of the final fairness hearing, the parties should prepare evidence of the named plaintiff's substantial efforts as class representative in order to better justify the discrepancy between this award and those of the unnamed class members.

The second prong of the adequacy inquiry examines the vigor with which the named plaintiff and his counsel have pursued the common claims. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021.

Plaintiff's counsel state that they have substantial experience in prosecuting employment claims. (Dion-Kindem Decl. ¶ 2; Blanchard Decl. ¶ 2 (Docket No. 127-3).) Peter R. Dion-Kindem states that he currently is, or previously has been, counsel of record in more than two dozen class/PAGA proceedings. (Dion-Kindem Decl. ¶¶ 4-5.) Lonnie C. Blanchard, III makes the same declaration. (Blanchard Decl. ¶¶ 4-5.) The court thus has some assurance that plaintiff's counsel has the experience necessary to maximize the return on this matter and vindicate the injuries of the class.

Plaintiff's counsel also indicate that the decision to settle plaintiff's claim was made after taking into account the uncertainty and risk of further litigation and the difficulties and delays inherent in class action litigation. (Dion-Kindem Decl. ¶ 7.) As such, "the court can safely assume that plaintiff's counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire class."

11

Murillo, 266 F.R.D. at 476.  Accordingly, the court finds that plaintiff and plaintiff's counsel are adequate representatives of the class, and therefore that plaintiff has satisfied all of the requirements for certification set forth in Rule 23(a).

2. Rule 23(b)

To be certified as a class action, an action must not only meet all of the prerequisites of Rule 23(a), but also satisfy the requirements of one of the three subdivisions of Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

a. Predominance

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues."  Murillo, 266 F.R.D. at 476 (citing Hanlon, 150 F.3d at 1022).

Plaintiff's and the class members' claims turn on the legality of a common method used by M-I for providing notice when obtaining consumer reports for employment purposes.  Central to these claims are common questions regarding, for example, whether the notice M-I used to disclose its procurement of consumer reports violated the FCRA and, in the event that it did, whether that violation was willful.  The class claim thus demonstrates a "common nucleus of facts and potential legal remedies," Hanlon,

150 F.3d at 1022, for the class members that can be resolved in a single adjudication.  Accordingly, the court finds that common questions of law and fact predominate over questions affecting only individual class members.

b.   Superiority

In addition to the predominance requirement, Rule 23(b)(3) permits class certification only upon a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  It sets forth four non-exhaustive factors that courts should consider in making this determination.  They are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.  Since the parties settled this action prior to certification, factors (C) and (D) are inapplicable. See Murillo, 266 F.R.D. at 477 ("Some of these factors, namely (D) and perhaps (C), are irrelevant if the parties have agreed to a pre-certification settlement.").

If class members pursued individual litigation, they could possibly recover statutory damages between $100 and $1,000 as well as punitive damages under the FCRA.  See 15 U.S.C. § 1681n(a).  This settlement would limit their recovery to their pro rata share of the net settlement amount.  As such, class members might have an interest in individually prosecuting their

own separate actions.  However, given the substantial risks
associated with litigating this case, class members' interests in
pursuing individual actions are likely relatively low, although
objectors at the fairness hearing may reveal otherwise.

Additionally, the court is unaware of any concurrent
litigation already begun by class members regarding the FCRA
issues presented here against M-I.  The class action device thus
appears to be the superior method for adjudicating this
controversy.

### 3.   Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it
"must direct to class members the best notice that is practicable
under the circumstances, including individual notice to all
members who can be identified through reasonable effort."  Fed.
R. Civ. P. 23(c)(2)(B).  Actual notice is not required.  Silber
v. Mabon, 18 F.3d 1449 (9th Cir. 1994).  The notice provided to
absent class members, however, must be "reasonably certain to
inform the absent members of the plaintiff class".  Id. at 1454
(quoting In re Victor Techs. Sec. Litig., 792 F.2d 862, 865 (9th
Cir. 1986).)

The Settlement Agreement (¶ 31) indicates that
Simpluris, Inc. will serve as the settlement administrator.
Simpluris has substantial experience administering class action
settlements (Dion-Kindem Decl. ¶ 23), and has previously served
as settlement administrator in several cases in this district.
See, e.g., Ontiveros v. Zamora, 303 F.R.D. 356 (E.D. Cal. 2014);
Bond v. Ferguson Enters., No. 1:09-CV-1662 OWW MJS, 2011 WL
2648879 (E.D. Cal. 2011); Vanwagoner v. Siemens Indus., Inc., No.

2:13-CV-01303 KJM EFB, 2014 WL 7273642 (E.D. Cal. 2014).

The Settlement Agreement provides that within 21 days of the settlement's preliminary approval, M-I will provide Simpluris with a class list (Settlement Agreement ¶ 41) that shall contain, to the extent available in M-I's records, each class member's full name, last known address, and Social Security Number (id. ¶ 7). It also provides that Simpluris shall conduct reasonable verification measures related to the class member's addresses and, within 14 days of receiving the list, shall send, via First Class U.S. Mail, a notice packet to all class members. (Id. ¶ 41.) The court is satisfied that this system of providing notice is reasonably calculated to provide notice to class members.

The Settlement Agreement provides that if, on or before the response deadline, a notice packet is returned to the settlement administrator as non-delivered, the settlement administrator will send the notice packet to the forwarding addressed affixed to it. (Id.) The Settlement Agreement makes the following provisions for notice packets returned without a forwarding address:

> If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved, and shall re-mail the Notice Mailing. If after performing a skip-trace search, the Notice Mailing is returned to the Settlement Administrator as non-deliverable, that individual will be deemed a Participating Class Member, and the Settlement Administrator will have no further obligation to undertake efforts to obtain an alternative address.

15

(Id.)  The court is satisfied that this system of providing notice is reasonably calculated to provide notice to class members.

Likewise, the notice itself very clearly identifies the options available to putative class members in an easy to read chart.  (Dion-Kindem Decl. Ex. A ("Notice of Settlement") at 1 (127-2).)  It also comprehensively explains the proceedings, the definition of the class, the terms of the settlement, and the procedure for objecting to, or opting out of, the settlement.  (Id. at 2-5.)  The content of the notice is therefore sufficient to satisfy Rule 23(c)(2)(B).  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

   B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that the proposed class preliminarily satisfies the requirements of Rule 23, the court will now examine whether the terms of the parties' settlement appear fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  This process requires the court to "balance a number of factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class

16

members to the proposed settlement.
Hanlon, 150 F.3d at 1026. Since many of these factors cannot be considered until the final fairness hearing, "the court need only conduct a preliminary review so as to resolve any 'glaring deficiencies' in the settlement agreement before authorizing notice to class members." Ontiveros 2014 WL 3057506, at *12 (citing Murillo, 266 F.R.D. at 478).)

### 1. Negotiation of the Settlement Agreement

Plaintiff states that "[t]his action has been vigorously litigated by the Parties and sufficient motion and appellate practice has been conducted by Plaintiff to assess the strengths of the parties' respective claims and defenses." (Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement at 19 (Docket No. 127-1).) Given the stage of this matter and plaintiff's representation, the court does not question that the proposed settlement was the result of arms-length bargaining. See Fraley v. Facebook, Inc., 966 F.Supp.2d 939, 942 (N. D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

### 2. Amount Recovered and Distribution

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Though each class member's approximately $50 recovery under the proposed settlement is less

than could potentially be secured if the case went to trial, it is not plainly deficient. See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") Numerous district courts have approved similar recoveries in other FRCA class action settlements. See Hillson v. Kelly Servs. Inc., 2017 WL 3446596, at *3 (E.D. Mich. 2017) (granting final approval for FRCA class action settlement with $19 per-capita net recovery); Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (recommending final approval of a FRCA class action settlement providing between $13 and $80 payouts to each class member), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017).[2]

For reasons discussed elsewhere in this order, the amount of the attorney's fee award, see infra II.B.3, gives the court pause. Nonetheless, the court cannot conclude at this stage that the award is excessive, let alone so grossly excessive that it imperils the fairness or adequacy of this settlement. Cf. Murillo, 266 F.R.D. at 480 (preliminarily approving settlement in spite of concerns that attorney's fee award was excessive). Accordingly, because the settlement appears "fair,

---

[2]    The court notes that though the plaintiff characterizes Lagos v. Leland Stanford Junior University, No. 15-CV-04524-KAW, 2017 WL 1113302 (N.D. Cal. Mar. 24, 2017), as approving a net payoff of approximately $14, the opinion actually denies preliminary approval of a FRCA class action settlement with a net payoff of $13.82 on the grounds that it is far less than the minimum statutory penalty of $100 provided for by the FRCA.

reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), the court will preliminarily approve the settlement agreement pending a final fairness hearing.

### 3.   Attorney's Fees

If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). In common fund cases, the district court has discretion to determine the amount of attorney's fees to be drawn from the fund by employing either the percentage method or the lodestar method. Id. at 968.   The percentage method is particularly appropriate in common fund cases where, as here, "the benefit to the class is easily quantified." Bluetooth, 654 F.3d at 942.   The Ninth Circuit has permitted courts to award attorney's fees using the percentage method "in lieu of the often more time-consuming task of calculating the lodestar." Id.   The court will thus adopt the percentage method here.

Under the percentage method, the court may award class counsel a percentage of the total settlement fund.   See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).   The

Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029. Class counsel request $300,000 in attorney's fees, which constitutes a remarkable 53.95% of the gross class settlement.

Class counsel attempts to justify the requested upward departure from the Ninth Circuit's 25% benchmark by comparing the $300,000 in requested attorneys' fees with a supposed $347,375 lodestar. (Dion-Kindem Decl. ¶¶ 15-20.) The court is not convinced by this attempted justification. Even in light of the class counsel's successful appeal from the dismissal of the First Amended Complaint, this fee award is extraordinarily high.

Lodestar calculation is a two-step process. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court "tak[es] the number of hours reasonably expended on the litigation and multipl[ies] it by a reasonable hourly rate." Id. Second, the court may adjust the resulting figure upwards or downwards based on a variety of factors. Id. In this case, the problems with the first step of plaintiffs' counsel's lodestar calculation process are so fundamental, that the court will not even reach the second part of the analysis.

Plaintiffs' counsel asks for $875 per hour for both Lonnie Blanchard and Peter R. Dion-Kindem. (See Dion-Kindem Decl. ¶ 18.) Plaintiffs' counsel's lodestar figure relies on the assumption that the typical hourly rates of an experienced Los Angeles lawyer are "reasonable" in this case. They are not.

The definition of a "reasonable hourly rate" for purposes of lodestar calculation is tethered to the "prevailing market rate in the relevant community." BMO Harris Bank N.A. v.

20

CHD Transp. Inc., No. 1:17-CV-00625 DAD BAM, 2018 WL 4242355, at *7 (E.D. Cal. Sept. 6, 2018).  When calculating the lodestar, the "relevant community" is the forum in which the adjudicating district court sits.  Id.  In this case, the "relevant community" for purposes of lodestar calculation is the Fresno division of the Eastern District of California.  Here, a more appropriate hourly rate for an attorney with approximately 40 years of experience is approximately $400 per hour. See Willis v. City of Fresno, No. 1:09-CV-01766 BAM, 2018 WL 1071184, at *7 (E.D. Cal. 2018)(awarding rate of $400 to attorney with more than forty years of experience); Verduzco v. Ford Motor Co., No. 1:13-CV-01437 LJO, 2015 WL 4131384, at *4 (E.D. Cal. 2015), report and recommendation adopted, No. 1:13-CV-01437 LJO, 2015 WL 4557419 (E.D. Cal. 2015)(awarding an hourly rate of $380 to an attorney with more than forty years of experience).  Given the market rates in Fresno, the requested hourly rates are unreasonably high.

In spite of these reservations, the court need not reduce the fee award at this point in the case. See Murillo, 266 F.R.D. at 480 (granting preliminary approval of the settlement despite concerns that the proposed attorney's fee award was unreasonable).  Instead, the court only preliminarily approves the fee award on the understanding that class counsel must demonstrate, on or before the date of the final fairness hearing, that the extraordinarily high proposed award is reasonable in light of the circumstances of the case.  In the likely event that class counsel is unable to do so, the court would then be required to reduce class counsel's fees to a reasonable amount or

to deny final approval of this settlement.

Accordingly, the court finds that preliminary approval of the proposed class, proposed class settlement, proposed class counsels' fee and settlement allocation, and proposed plan of notice is appropriate.

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary certification of a conditional settlement class and preliminary approval of the class action settlement (Docket No. 127) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) the following class be provisionally certified for the purpose of settlement in accordance with the terms of the stipulation: All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom M-I L.L.C. may have procured or caused to be procured a consumer report for employment purposes during the period from May 19, 2009 through November 1, 2018, who M-I L.L.C. hired, and who have not signed a severance agreement and release or equivalent agreement releasing the claims asserted in the Action;

(2) Sarmad Syed is appointed as the representatives of the settlement class and is provisionally found to be an adequate representative within the meaning of Federal Rule of Civil Procedure 23;

(3) Peter R. Dion-Kindem, P.C., 21550 Oxnard St., Suite 900, Woodland Hills, CA 91367; and Blanchard Law Group, APC, 3311 East Pico Boulevard Los Angeles, CA 90023, are provisionally found to be fair and adequate representatives of the settlement

class and are appointed as class counsel for the purposes of representing the settlement class conditionally certified in this order;

(4) Simpluris, Inc. is appointed as the settlement administrator;

(5) the form and content of the proposed Notice of Settlement (Dion-Kindem Decl., Ex. A) are approved, except to the extent that they must be updated to reflect dates and deadlines specified in this order;

(6) no later than twenty-one (21) days from the date this order is signed, defendant shall provide the class list to Simpluris, Inc.;

(7) no later than fourteen (14) days from the date it receives the class list from defendant, Simpluris shall mail a Notice of Settlement to all members of the settlement class in the manner provided for in this order;

(8) no later than ninety (90) days from the date this order is signed, any member of the settlement class who intends to object to, comment upon, or opt out of the settlement shall mail written notice of that intent to Simpluris, pursuant to the instructions in the Notice of Settlement;

(9) a final fairness hearing shall be held before this court on Monday, August 5, 2019, at 1:30 p.m. in Courtroom 5 to determine whether the proposed settlement is fair, reasonable, and adequate and should be approved by this court; to determine whether the settlement class's claims should be dismissed with prejudice and judgment entered upon final approval of the settlement; to determine whether final class certification is

appropriate; and to consider class counsel's applications for attorney's fees, costs, and an incentive award to plaintiff. The court may continue the final fairness hearing without further notice to the members of the class;

(10) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file with this court a petition for an award of attorneys' fees and costs.  Any objections or responses to the petition shall be filed no later than fourteen (14) days before the final fairness hearing.  Class counsel may file a reply to any objections no later than seven (7) days before the final fairness hearing;

(11) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file and serve upon the court and defendant's counsel all papers in support of the settlement, the incentive award for the class representative, and any award for attorneys' fees and costs;

(12) no later than twenty-eight (28) days before the final fairness hearing, Simpluris, Inc. shall prepare, and class counsel shall file and serve upon the court and defendant's counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, and a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing in person or by counsel and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed

settlement, (b) the requested award of attorneys' fees,
reimbursement of costs, and incentive award to the class
representative, and/or (c) the propriety of class certification.
To be heard in opposition at the final fairness hearing, a person
must, no later than ninety (90) days from the date this order is
signed, (a) serve by hand or through the mails written notice of
his or her intention to appear, stating the name and case number
of this action and each objection and the basis therefore,
together with copies of any papers and briefs, upon class counsel
and counsel for defendants, and (b) file said appearance,
objections, papers, and briefs with the court, together with
proof of service of all such documents upon counsel for the
parties.

          Responses to any such objections shall be served by
hand or through the mails on the objectors, or on the objector's
counsel if there is any, and filed with the court no later than
fourteen (14) calendar days before the final fairness hearing.
Objectors may file optional replies no later than seven (7)
calendar days before the final fairness hearing in the same
manner described above.  Any settlement class member who does not
make his or her objection in the manner provided herein shall be
deemed to have waived such objection and shall forever be
foreclosed from objecting to the fairness or adequacy of the
proposed settlement, the judgment entered, and the award of
attorneys' fees, costs, and an incentive award to the class
representative unless otherwise ordered by the court.

          (14) pending final determination of whether the
settlement should be ultimately approved, the court preliminarily

enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

Dated:  March 12, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE