UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SARMAD SYED, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>M-I LLC, a Delaware Limited Liability Company, et al.,<br><br>Defendants. | No. 1:14-cv-00742 WBS BAM<br><br>MEMORANDUM AND ORDER RE: FINAL APPROVAL OF CLASS SETTLEMENT AND PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS |

----oo0oo----

Plaintiff Sarmad Syed brought this putative class action lawsuit against M-I, LLC ("M-I") and other parties alleging M-I violated federal credit reporting laws while conducting pre-employment background checks.

The parties have reached a settlement which would resolve plaintiff's claims against defendant M-I. (See Dion-Kindem Decl. in Supp. of Mot. for Preliminary Approval Ex. 1, Joint Stipulation of Class Action Settlement and Release

1

("Settlement Agreement") (Docket No. 127-2).) Plaintiff now moves for final approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e). (Docket No. 136.) Plaintiff's also move for attorneys' fees and costs. (Docket No. 135.)

I. Factual and Procedural Background

Plaintiff applied for a job with M-I on July 20, 2011. (First Amended Complaint ("FAC") ¶ 14.) During the application process, plaintiff filled out and signed a one-page form entitled "Pre-Employment Disclosure and Release." (Id.) That form included the following language:

> I understand that the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release, and indemnify prospective employer [defendant M-I LLC], PreCheck, Inc., their agents, servants, and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a third party without verification.
>
> It is expressly understood that the information obtained through the use of this release will not be verified by PreCheck, Inc.

(Id.)

Plaintiff alleges that M-I violated Section 1681(b)(2) of the Fair Credit Reporting Act by procuring or causing to be procured a consumer report for employment purposes via a disclosure form that contained not only language authorizing the procurement of a consumer report, but also an indemnity clause and release. (Id. ¶ 17.) Plaintiff alleges that as a result, class members could recover statutory damages between $100 and $1,000 as well as punitive damages under 15 U.S.C. § 1681n(a).

(Id. ¶ 31.)

In October 2018, the parties reached a settlement. (See Docket No. 122.) Their Settlement Agreement provides for a gross settlement amount of $556,000. (Settlement Agreement ¶ 34.) The Settlement Agreement specifies that the defendants agree not to oppose a motion by class counsel for attorney's fees (up to $300,000) and attorney's costs (up to $10,000) from this gross settlement amount. (Id. ¶¶ 37-38.) Notably, the Settlement Agreement provides that any portion of the requested attorneys' fees or costs not awarded will revert to the defendant. (Id.) The Settlement Agreement also provides for the deduction of settlement administration costs from the gross settlement amount (id. ¶ 36) and for a class representative service award of up to $5,000 (id. ¶ 35).

In its order granting preliminary approval of a class and class settlement, the court provisionally certified the following class:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom M-I L.L.C. may have procured or caused to be procured a consumer report for employment purposes during the period from May 19, 2009 through November 1, 2018, who M-I L.L.C. hired, and who have not signed a severance agreement and release or equivalent agreement releasing the claims asserted in the Action[.]

(Order re: Preliminary Approval of Class Settlement at 22 (Docket No. 132).) The court appointed Sarmad Syed as class representative, the Peter R. Dion-Kindem and the Blanchard Law Group as class counsel, and Simpluris, Inc. ("Simpluris") as settlement administrator. (Id. at 22-23.) The court also

approved the notice of settlement and final approval hearing and opt-out form. (Id. at 23.) The court set the final fairness hearing for August 5, 2019. (Id. at 23-24.) It directed class counsel to file with the court, within twenty-eight days of the fairness hearing, a petition for an award of attorney's fees and costs; all papers in support of the settlement, incentive award, fees, and costs; and a declaration from the settlement administrator setting forth the services rendered, proof of mailing, and a list of all class members who have commented upon or objected to the settlement. (Id. at 24.)

After conducting the final fairness hearing and carefully considering the terms of the settlement, the court now addresses whether this class should receive final certification; whether the proposed settlement is fair, reasonable, and adequate; and whether class counsel's request for attorneys' fees and costs, as well as an enhancement award for the representative plaintiff, should be granted.

II. Discussion

Judicial policy strongly favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

There are two stages to a court's approval of a proposed class action settlement. In the first phase, the court temporarily certifies a class, authorizes notice to that class,

and preliminarily approves the settlement, with final approval contingent on the outcome of a fairness hearing. Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014.) If a court determines that a proposed class action settlement does deserve preliminary approval, then notice of the action is given to the class members and a fairness hearing is held.

In the second phase, the court holds a fairness hearing and entertains class members' objections to both the suitability of the class action as a vehicle for this litigation and the terms of the settlement. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.). Following the fairness hearing, the court makes a final determination regarding whether the parties should be allowed to settle the class action pursuant to the agreed upon terms.

Having previously preliminarily certified the proposed class and approved the proposed settlement, the court now makes a final determination as to whether the class should be certified and as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.

A. Class Certification

To be certified, the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") and Federal Rule of Civil Procedure 23(b)("Rule 23(b)"). See Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). In the settlement context, the court's careful scrutiny of the extent to which the putative class complies with the requirements of Rules 23(a) and 23(b) is especially important

since the court will "lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).

> Rule 23(a) restricts class actions to cases where:
>
> > (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation, respectively. See Leyva, 716 F.3d at 512. While the court must evaluate Rule 23(a)'s requirements independently, they serve a common purpose of "ensur[ing] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).

In the court's order granting preliminary approval of the proposed class action settlement, the court found that the putative class satisfied the numerosity, commonality, and typicality requirements of Rule 23(a). However, the court expressed some concerns about the adequacy of representation. The court is unaware of any changes that would alter its analysis as to numerosity, typicality, or commonality, and because the parties did not indicate at the fairness hearing that they were aware of any such developments, the court finds these requirements satisfied. The court will thus focus its Rule 23(a)

analysis on evaluating adequacy of representation for purposes of final certification.

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Although the Ninth Circuit has specifically approved the award of "reasonable incentive payments" to named plaintiffs, the use of an incentive award nonetheless raises the possibility that a plaintiff's interest in receiving that award will cause his interests to diverge from the class's interest in a fair settlement. See Staton, 327 F.3d at 977-78. In the order preliminarily approving the proposed class action settlement, the court expressed concern that the requested $5,000 incentive award for the class representative is disproportionately large relative to the average class member's recovery of approximately $50.[1] (Order Re: Preliminary Approval at 10.)

Plaintiff Syed submitted a declaration in support of his Motion for Award of Attorneys' Fees and Costs and Representative Incentive Award. (Syed Decl. (Docket No. 135-3).) This declaration outlines each of the Syed's contributions to the case. Plaintiff declares that he invested over 50 hours of time in case. (Id. ¶ 9.) Plaintiff declares that he contributed to the prosecution of this case by:

---

[1] The average class member received $46.84. (See Alcantara Decl. ¶ 12.)

7

>             obtaining legal counsel, speaking with my legal
>             counsel on numerous occasions, both in person and
>             over the phone, assisting them in gathering
>             information, reviewing pleading and other
>             documents in the case, reviewing the Settlement,
>             and other case related documents on my own and
>             with my counsel to make sure that the Settlement
>             and other work my attorneys performed are in the
>             best interest of the Settlement Class.

(Id.) Plaintiff's declaration also highlights the potential professional risk and stigma he took on as a result of bringing this action. (Id. ¶¶ 11-12.)

The court is satisfied with the evidence of plaintiff's substantial efforts taken as class representative. In light of plaintiff's contributions to the prosecution of this action, the court finds that the requested $5,000 incentive award is reasonable and will not impair the alignment of plaintiff's interests and those of the class.

Because the order granting preliminary approval also found the second step of the adequacy analysis satisfied (Order Re: Preliminary Approval at 11-12), and nothing has come to the court's attention that would change its analysis, the court determines that plaintiff is an adequate class representative.

An action that meets all the prerequisites of Rule 23(a) may only be certified as a class action if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512. Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its order granting preliminary approval of the settlement, the court found that both prerequisites of Rule 23(b)(3) were satisfied. (Order Re: Preliminary Approval at 12-14.) The court is unaware of any changes that would affect this conclusion.

Having determined that the proposed class satisfies the requirements of both Federal Rule of Civil Procedure 23(a) and those of Federal Rule of Civil Procedure 23(b), the court will grant final certification to the proposed class.

3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice is not required. See Silber v. Mabon, 18 F.3d 1449 (9th Cir. 1994). The notice provided to absent class members, however, must be "reasonably certain to inform the absent members of the plaintiff class". Id. at 1454 (quoting In re Victor Techs. Sec. Litig., 792 F.2d 862, 865 (9th Cir. 1986).)

As provided by the Settlement Agreement, the settlement administrator, Simpluris, mailed the notice packed to the last known address of 4,295 class members. (Alcantara Decl. ¶ 8 (Docket No. 136-2).) Rust used the National Change of Address Database to update the class list. (See id. ¶ 7.) If a class

9

member's notice packet was returned as undeliverable without a forwarding address, Rust performed an advanced address search, or a "skip trace." (Id. ¶ 9.) Ultimately, only 76 notices were undeliverable because Rust was unable to find a correct address. (Id.) The court is satisfied that this system of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances.

Likewise, the notice itself contained an easy-to-read table that clearly identified the options available to putative class members -- do nothing, ask to be excluded or object by June 10, 2019, and go to hearing on August 5, 2019 -- and comprehensively explained the nature and mechanics of the settlement. (See Alcantara Decl., Ex. A.) The content of the notice is therefore sufficient to satisfy Rule 23(c)(2)(B). See Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting Mendoza v. Tucson Sch. Dist. No. 1., 623 F.2d 1338, 1352 (9th Cir. 1980))).

B.  Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that the proposed class preliminarily satisfies the requirements of Rule 23, the court will now examine whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). This process requires the court to "balance a number of factors,"

including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026. The court will address each in turn.

### 1. Strength of Plaintiff's Case

An important consideration is the strength of plaintiff's case on the merits compared to the settlement amount offered. See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). The court, however, is not required to reach an ultimate conclusion of the merits, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Officers for Justice v. Civ. Serv. Comm'n of City & Cty of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

Plaintiff alleges claims under the Fair Credit Reporting Act. Specifically, plaintiff claims that defendant procured or caused to be procured a consumer report for employment purposes via a disclosure form that contained not only language authorizing the procurement of a consumer report, but also an indemnity clause and release. (FAC ¶ 17.) If this case were to proceed, defendant could argue that the plaintiffs lack standing to bring their claims. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). See id. (holding that plaintiffs alleging violations of the FCRA must show a concrete injury to establish Article III standing and that an alleged "bare procedural

violation" of the FCRA does not constitute a concrete injury for Article III purposes). Thus, in comparing the strength of plaintiff's case with the proposed settlement, the court finds that the proposed settlement is a fair resolution of the issues in this case.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Further litigation could delay resolution of this case and increase expenses. Thus, the court finds that this factor weighs in favor of final approval of the settlement. See DIRECTV, Inc., 221 F.R.D. at 526 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

### 3. Risk of Maintaining Class Action Status

Plaintiff has not yet filed a motion for class certification. The likelihood, however, that plaintiffs would succeed with class certification is diminished by the Supreme Court's ruling in Spokeo, 136 S. Ct. 1540. Regardless, the court is unaware of any potential future development that could upset certification if the plaintiffs were in fact able to obtain class certification. Accordingly, the court will not consider this factor in its analysis. See In re Veritas Software Corp. Sec. Litig., No. 03-0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov.15, 2005) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"), vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007).

### 4. Amount Recovered and Distribution

12

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The Net Settlement Fund is $201,000.000 and each class member's estimated recovery is $46.84 under the proposed settlement. (See Alcantara Decl. ¶ 12.) Though this is less than could potentially be secured if the case went to trial, it is not plainly deficient. Numerous district courts have approved similar recoveries in other FRCA class action settlements. See Hillson v. Kelly Servs. Inc., 2017 WL 3446596, at *3 (E.D. Mich. 2017) (granting final approval for FRCA class action settlement with $19 per-capita net recovery); Moore v. Aerotek, Inc., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017)(recommending final approval of a FRCA class action settlement providing between $13 and $80 payouts to each class member).

Though the settlement represents far less than the plaintiffs could have potentially secured had the case gone to trial, it is not plainly deficient. See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") Thus, in light of the risks and expense of further litigation in this matter, the court finds the settlement amount to be "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2).

Accordingly, the court will grant final approval to the settlement.

        5.    <u>Extent of Discovery and the State of Proceedings</u>

This matter has been vigorously litigated. Plaintiff's counsel has argued motions to dismiss before this court. (<u>See</u> Docket No. 45.) Plaintiff also successfully appealed this court's dismissal of his claims as to Defendant M-I LLC to the Ninth Circuit. <u>See</u> <u>Syed v. M-I, LLC</u>, 853 F.3d 492, 495 (9th Cir.), <u>cert. denied</u>, 138 S. Ct. 447 (2017). Thus, although this factor is not essential to the settlement of a class action, <u>see</u> <u>Lachance v. Harrington</u>, 965 F. Supp. 630, 644-45 (E.D. Pa. 1997), the court finds that, on balance, it weighs slightly in favor of settlement in this case.

        6.    <u>Experience and Views of Counsel</u>

Plaintiff's counsel Peter R. Dion-Kindem has more than twenty years of experience and has practiced in civil litigation, including the prosecution of employment claims, throughout his career. (Dion-Kindem Decl. in Supp. of Mot. for Final Approval and Attorneys' Fees and Costs (Dion-Kindem Decl. ¶ 2 (Docket No. 136-1).) Based on this experience, plaintiff's counsel believes the proposed settlement is fair, reasonable, and adequate to the class members. (<u>See</u> Mot. for Final Approval at 3.) The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. <u>Alberto v. GMRI, Inc.</u>, No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008). This factor thus supports approval of the settlement agreement.

        7.    <u>Presence of Government Participant</u>

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

        8.    <u>Reaction of Class Members to Proposed Settlement</u>

Notice of the settlement was sent to 4,295 class members and as of June 27, 2019, only four class members had submitted requests for exclusion. (Alcantara Decl. ¶¶ 8, 13.) No class members have objected. (<u>Id.</u> ¶ 14.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>DIRECTV</u>, 221 F.R.D. at 529. Accordingly, this factor weighs in favor of the court's approval of the settlement.

Having considered the foregoing factors, the court finds the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).

  C.    <u>Attorney's Fees</u>

If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).

Defendant has agreed not to oppose any motion for attorneys' fees of equal to or less than $300,000. (Dion-Kindem Decl. ¶ 10.) Plaintiff now asks for $300,000 in attorney's fees. (Mot. for Attorney Fees at 1 (Docket No. 135).) This request is justified with a supposed $379,000 lodestar. (Dion-Kindem Decl. ¶ 29.) That figure represents a combined 433.25 hours of work by

| | |
|---|---|
| 1 | Lonnie C. Blanchard and Peter R. Dion-Kindem, billed at an $875 |
| 2 | hourly rate. (See id. ¶ 23.) |

Lodestar calculation is a two-step process. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court "tak[es] the number of hours reasonably expended on the litigation and multipl[ies] it by a reasonable hourly rate." Id. Second, the court may adjust the resulting figure upwards or downwards based on a variety of factors. Id. The court will address each step in turn.

The definition of a "reasonable hourly rate" for purposes of lodestar calculation is tethered to the "prevailing market rate in the relevant community." BMO Harris Bank N.A. v. CHD Transp. Inc., No. 1:17-CV-00625 DAD BAM, 2018 WL 4242355, at *7 (E.D. Cal. Sept. 6, 2018). When calculating the lodestar, the "relevant community" is the forum in which the adjudicating district court sits. Id. In this case, the "relevant community" for purposes of lodestar calculation is the Fresno division of the Eastern District of California. Plaintiff's memorandum in support of his petition for attorneys' fees provides evidence that an hourly rate of $875 is within the range of rates for partners in "Northern California and the Los Angeles area." (Pl.'s Petition for Award of Attorney's Fees and Costs at 3-4.) This evidence, however, is not dispositive of the reasonableness of an $875 hourly rate in the forum in which this court sits, i.e. Fresno. Here, a more appropriate hourly rate for an attorney with approximately 40 years of experience is approximately $400 per hour. See Willis v. City of Fresno, No. 1:09-CV-01766 BAM, 2018 WL 1071184, at *7 (E.D. Cal.

16

2018)(awarding rate of $400 to attorney with more than forty years of experience); Verduzco v. Ford Motor Co., No. 1:13-CV-01437 LJO, 2015 WL 4131384, at *4 (E.D. Cal. 2015), report and recommendation adopted, No. 1:13-CV-01437 LJO, 2015 WL 4557419 (E.D. Cal. 2015)(awarding an hourly rate of $380 to an attorney with more than forty years of experience). Given the market rates in Fresno, the requested hourly rates are unreasonably high.

In light of the findings of other courts, this court finds that an hourly rate of $400 is reasonable for attorneys in Fresno with experience similar to that of Mr. Blanchard and Mr. Dion-Kindem. Given the 433.25 hours expended on the litigation, the first step of the lodestar calculation process yields the figure $173,300.

After calculating the lodestar, the court must decide whether to enhance or reduce the award in the light of particular factors, including the novelty and difficulty of the case, the skill displayed in presenting them, the extent the litigation precluded other employment by the attorneys, and the contingent nature of the fee award. Ketchum v. Moses, 24 Cal. 4th 1122, 1132 (2001). However, "[t]here is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation." Thayer v. Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 834 (1st Dist. 2001).

The instant case presented relatively complex issues involving defendant's liability for its inclusion of release language in the FCRA disclosure and authorization forms it utilized. Plaintiff litigated this issue before this court as

well as on appeal to the Ninth Circuit.  (Dion-Kindem Decl. ¶ 16.)

In the approximately five years since this case began, plaintiff's counsel invested 433.25 hours in this litigation, and since class counsel took this matter on a purely contingent basis the risk of nonpayment was ever-present.  (Id. ¶ 20.)

Collectively, these factors weigh in favor of enhancing the lodestar; the court will apply a 1.73 multiplier.  This yields a total award of $299,809 in attorneys' fees.  Accordingly, the court will allow the award of attorneys' fees in the amount of $299,809, which is just shy of the $300,000 attorneys' fee award agreed to by the parties.  (See Dion-Kindem Decl. ¶ 10.)

Plaintiff also petitions the court for an award of attorneys' costs.  Specifically, plaintiff asks for $4,307.79 in costs.  (See Pl.'s Motion for Award of Attorneys' Fees and Costs at 2 (Docket No. 135).)  No objections have been filed to this request for reimbursement.  The court has reviewed the expenses for which class counsel is seeking reimbursement.  (See Dion-Kindem Decl. ¶ 9; Pl.'s Petition for Award of Attorneys' Fees and Costs Ex. 2, Blanchard Decl. ¶ 6 (Docket No. 135-2).)  The court finds the requested $4307.79 costs' award to be reasonable.  All of the requested expenses are for services that are routinely and properly reimbursed, i.e. transcription, PACER access fees, and court filing fees.  Accordingly, the court will allow the award of costs in the amount of $4307.79.

IT IS THEREFORE ORDERED that plaintiffs' Motion for Final Approval of the Class and Class Action Settlement (Docket

No. 136) and plaintiff's Motion for Award of Attorneys' Fees and Costs (Docket No. 135) be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) as to whom M-I L.L.C. may have procured or caused to be procured a consumer report for employment purposes during the period from May 19, 2009 through November 1, 2018, who M-I L.L.C. hired, and who have not signed a severance agreement and release or equivalent agreement releasing the claims asserted in the Action;

(2) the court appoints the named plaintiff Sarmad Syed as representative of the class and finds that he meets the requirements of Rule 23;

(3) the court appoints Peter R. Dion-Kindem and Blanchard Law Group as counsel to the settlement class, and finds that they meet the requirements of Rule 23;

(4) the Settlement Agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The plan is approved and adopted. The notice to the class complies with Rule 23 and is approved and adopted.

(5) having found that the parties and their counsel took appropriate efforts to locate and inform all putative class members of the settlement, and given that no class members filed an objection to the settlement, the court finds and orders that no additional notice to the class is necessary;

19

1          (6) as of the date of the entry of this order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' Settlement Agreement;

         (7) plaintiff's counsel is entitled to fees in the amount of $299,809 and costs in the amount of $4307.79.

         (8) the named plaintiff is entitled to an incentive payment of $5,000; and

         (9) this action is dismissed with prejudice; however, without affecting the finality of this order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement with respect to all parties to this action and their counsel of record.

         The Clerk is instructed to enter judgment accordingly.

Dated: August 6, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

20